ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Scott K. Dauscher          State Bar No. 204105
    SDauscher@aalrr.com
Amber S. Healy             State Bar No. 232730
    AHealy@aalrr.com
Christopher S. Andre       State Bar No. 180326
    CAndre@aalrr.com
12800 Center Court Drive South, Suite 300
Cerritos, California 90703-9364
Telephone:  (562) 653-3200
Fax:  (562) 653-3333

Attorneys for Defendant ZOGSPORTS
HOLDINGS LLC, erroneously sued as
ZOGSPORTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| KEITH ERNST, ARTHUR OGANESYAN, and ALAN NAH, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>ZOGSPORTS, an unknown business entity; and DOES 1-50, Inclusive,<br><br>                    Defendant. | Case No.        2:18-cv-09043-RGK (MRWx)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION PURSUANT TO FLSA SECTION 216(B) AND MOTION FOR CLASS CERTIFICATION PURSUANT TO FRCP RULE 23**<br><br>**[DECLARATIONS OF AMBER S. HEALY AND MICHAEL MORTELLARO; EVIDENTIARY OBJECTIONS; AND OBJECTIONS TO PLAINTIFFS' PROPOSED TRIAL METHODOLOGY STATEMENT FILED CONCURRENTLY HEREWITH]**<br><br>Date:        February 11, 2019<br>Time:        9:00 AM<br>Judge:       Hon. R. Gary Klausner<br>Ctrm.:       850<br><br>Removal Filed: October 22, 2018<br>Complaint Filed:   September 20, 2018<br>[Los Angeles County Superior Court] |

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

016463.00008
22493709.4

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

# TABLE OF CONTENTS

2

**Page**

3

I. INTRODUCTION ...................................................................................................9

4

II. STATEMENT OF FACTS ..................................................................................11

5

    A. League Participation and Rules .......................................................................11

6

    B. Participant Registration and Tracking ............................................................12

7

III. PLAINTIFFS WERE NEITHER EMPLOYEES NOR VOLUNTEERS ................13

8

    A. California and Federal Legal Standards For Volunteers ..................................15

9

IV. PLAINTIFFS' CLAIMS ARE NOT SUITABLE FOR CLASS TREATMENT

10

UNDER FRCP RULE 23. ......................................................................................17

11

    A. MEMBERS OF PLAINTIFFS' PROPOSED CLASSES ARE NOT

ASCERTAINABLE...............................................................................................17

12

        1. Requiring Class Members to Self-Identify for Inclusion in the

13

Class Is Untenable and Violates Due Process. ...................................................19

14

    B. TO ASSERT A COLORABLE CLAIM THEY SHOULD HAVE BEEN PAID

EMPLOYEES, PLAINTIFFS MUST HAVE AN EXPECTATION OF PAY. .................20

15

    C. PLAINTIFFS CANNOT DEMONSTRATE PREDOMINANCE,

16

SUPERIORITY OR MANAGEABILITY WHERE INDIVIDUAL INQUIRIES INTO

EXPECTATION OF PAYMENT ARE REQUIRED. ......................................................21

17

    D. PLAINTIFFS AND THEIR COUNSEL ARE INADEQUATE.........................24

18

        1. Plaintiffs Are Not Adequate Class Representatives ...................25

19

        2. Plaintiffs' Counsel Cannot Adequately Represent the Class. .....26

20

V. PLAINTIFFS' CLAIMS ARE NOT SUITABLE FOR COLLECTIVE ACTION

21

TREATMENT UNDER 216(B). ............................................................................28

22

VI. CONCLUSION ..................................................................................................28

23

24

25

26

27

28

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

016463.00008
22493709.4

_____

# TABLE OF AUTHORITIES

**Pages**

FEDERAL CASES

*Abrams v. City of Los Angeles*
2014 WL 6473418, at *2 (C.D. Cal. 2014)........................................................28

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997)........................................................................................19,21

*Archie v. Grand Cent. P'ship, Inc.*
997 F. Supp. 504 (S.D.N.Y. 1998)......................................................................15

*In re Asacol Antitrust Litig.*
907 F.3d 42 (1st Cir. 2018)............................................................................20,23

*Ault v. J.M. Smucker Co.*
310 F.R.D. 59 (S.D.N.Y. 2015) ..........................................................................18

*Bachman v. Pertschuk*
437 F. Supp. 973 (D.D.C. 1977) .........................................................................27

*Bailey v. Patterson*
369 U.S. 31 (1962).............................................................................................20

*In re Cal. Micro Devices Sec. Litig.*
168 F.R.D. 257 (N.D. Cal. 1996)........................................................................25

*Campbell v. City of Los Angeles*
903 F.3d 1090 (9th Cir. 2018) ............................................................................28

*Comcast Corp. v. Behrend*
569 U.S. 27 (2013).............................................................................................17

*Connelly v. Hilton Grand Vacations Co., LLC*
294 F.R.D. 574 (S.D. Cal. 2013) ........................................................................21

*Daniel F. v. Blue Shield of California*
305 F.R.D. 115 (N.D. Cal. 2014)........................................................................18

*Doe v. Unocal Corp.*
67 F.Supp.2d 1140 (C.D.Cal.1999) ....................................................................20

*Donovan v. New Floridian Hotel, Inc.*
676 F.2d 468 (11th Cir. 1982) ............................................................................15

*Douglas v. Talk Am. Inc.*
2009 WL 10669481 (C.D. Cal. 2009)..................................................................25

*Fechter v. HMW Industries*
117 F.R.D. 362 (E.D.Pa.1987)............................................................................27

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**TABLE OF AUTHORITIES**
**(CONTINUED)**

<u>Pages</u>

*Flores v. EP2, Inc.*
2011 WL 13213897 (C.D. Cal. 2011) ........................................................... 25

*Gen. Tel. Co. of Sw. v. Falcon*
457 U.S. 147 (1982) .................................................................... 17,20,25,27

*Graves v. Women's Prof. Rodeo Ass'n, Inc.*
907 F.2d 71 (8th Cir. 1990) ................................................................... 13,14

*Gravestock v. Abilene Motor Express, Inc.*
2018 WL 1620885 (C.D. Cal. 2018) ........................................................... 21

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ............................................................... 21,24

*Hanon v. Dataproducts, Corp.*
976 F.2d 497 (9th Cir. 1992) ................................................................. 17,20

*Hansberry v. Lee*
311 U.S. 32 (1940) ................................................................................. 25

*Jeung v. Yelp, Inc.*
2015 WL 4776424 (N.D. Cal. 2015) ........................................................... 15

*Jones v. ConAgra Foods, Inc.*
2014 WL 2702726 (N.D. Cal. 2014) ........................................................... 19

*Juino v. Livingston Par. Fire Dist. No. 5*
717 F.3d 431 (5th Cir. 2013) ................................................................... 13

*Kamm v. Cal. City Dev. Co.*
509 F.2d 205 (9th Cir. 1975) ................................................................... 11

*Kayes v. Pac. Lumber Co.*
51 F.3d 1449 (9th Cir. 1995) ................................................................... 27

*Kesler v. Ikea U.S. Inc.*
2008 WL 413268 (C.D. Cal. 2008) ........................................................... 25

*Konik v. Time Warner Cable*
2010 WL 8471923 (C.D. Cal. 2010) ........................................................... 22

*Kramer v. Scientific Control Corp.*
534 F.2d 1085 (3rd Cir. 1976) ................................................................. 27

*Maddock v. KB Homes, Inc.*
248 F.R.D. 229 (C.D. Cal. 2007) ............................................................ 23,24

*Marlo v. U.P.S.*
639 F.3d 942 (9th Cir. 2011) ................................................................... 17

016463.00008
22493709.4

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

**TABLE OF AUTHORITIES**
**(CONTINUED)**

2

<u>Pages</u>

3

*Martin v. Pacific Parking Sys. Inc.*

4

583 Fed.Appx. 803 (9th Cir. 2014) ................................................ 19

5

*Martinez v. Flower Foods, Inc.*
2016 WL 10746664 (C.D. Cal. Feb. 1, 2016) .......................... 18,19

6

*McKinsty v. Swift Transportation Co. of Arizona, LLC*

7

2017 WL 10059288 (C.D. Cal. 2017) ........................................... 22

8

*McLaughlin v. Ensley*
877 F.2d 1207 (4th Cir. 1989) ....................................................... 15

9

*Misra v. Decision One Mortgage Company, LLC*

10

673 F.Supp.2d 987 (C.D. Cal. 2008) ............................................ 28

11

*In re N. Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*
693 F.2d 847 (9th Cir. 1982) .................................................... 23,24

12

*Najarian v. Avis Rent A Car Sys.*

13

2007 WL 4682071 (C.D. Cal. 2007) ............................................ 18

14

*O'Connor v. Boeing North American, Inc.*
184 F.R.D. 311 (C.D. Cal. 1998) .................................................. 18

15

*Okoro v. Pyramid 4 Aegis*

16

2012 WL 1410025 (E.D. Wis. 2012) ........................................ 15,16

17

*Patel v. Patel*
2014 WL 6390893 (E.D. Cal. 2014) ......................................... 16,24

18

*Petrovic v. Amoco Oil Co.*

19

200 F.3d 1140 (8th Cir. 1999) ...................................................... 27

20

*Pfohl v. Farmers Ins. Grp.*
2004 WL 554834 (C.D. Cal. 2004) ............................................... 28

21

*Pollack v. Foto Fantasy, Inc.*

22

2010 WL 11595486 (C.D. Cal. 2010) ........................................... 24

23

*Pryor v. Aerotek Sci., LLC*
278 F.R.D. 516 (C.D. Cal. 2011) .................................................. 18

24

*Purdham v. Fairfax Cty. Sch. Bd.*

25

637 F.3d 421 (4th Cir. 2011) ........................................................ 15

26

*Redman v. RadioShack Corp.*
768 F.3d 622 (7th Cir. 2014) ........................................................ 25

27

*Rhea Lana, Inc. v. U.S. Dep't of Labor*

28

271 F. Supp. 3d 284 (D.D.C. 2017) .............................................. 16

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

## TABLE OF AUTHORITIES
### (CONTINUED)

2

<u>Pages</u>

3

*Seig v. Yard House Rancho Cucamonga, LLC*
2007 WL 6894503 (C.D. Cal. Dec. 10, 2007)................................................ 26

4

*Senne v. Kansas City Royals Baseball Corp.*
315 F.R.D. 523 (N.D. Cal. 2016) ................................................................... 18

5

6

*Shields v. Wash. Bancorporation*
1991 WL 221940 (D.D.C. Oct. 10, 1991) ...................................................... 25

7

*Susman v. Lincoln American Corp.*
561 F.2d 86 (7th Cir. 1977) ........................................................................... 27

8

9

*Tietsworth v. Sears, Roebuck & Co.*
2013 WL 1303100 (N.D. Cal. Mar. 28, 2013) ............................................... 18

10

*Tony & Susan Alamo Found. v. Sec'y of Labor*
471 U.S. 290 (1985) ............................................................................. 15,16,17

11

*Turoff v. May Co.*
531 F.2d 1357 (6th Cir. 1976) .................................................................. 19,27

12

13

*Tyson Foods, Inc. v. Bouaphakeo*
136 S.Ct. 1036 ............................................................................................... 20

14

*Valentino v. Carter-Wallace, Inc.*
97 F.3d 1227 (9th Cir.1996) ..................................................................... 23,24

15

16

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011) ................................................................................. 17,23

17

*Walling v. Portland Terminal Co.*
330 U.S. 148 (1947) ................................................................................. 15,17

18

19

*Wirtz v. Wardlaw*
339 F.2d 785 (4th Cir. 1964) ......................................................................... 15

20

*Woods v. Google LLC*
2018 WL 4030570 (N.D. Cal. 2018)............................................................. 25

21

22

*Zylstra v. Safeway Stores, Inc.*
578 F.2d 102 (5th Cir. 1978) ......................................................................... 27

23

**STATE CASES**

24

*In re Am. Online Cases*
2005 WL 1249228 (Cal. Ct. App. 2005) .................................................. 16,22

25

26

*Apple Computer, Inc. v. Superior Court*
126 Cal.App.4th 1253 (2005) ........................................................................ 27

27

28

016463.00008
22493709.4

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (CONTINUED)

<u>Pages</u>

*Bell v. Farmers Ins. Exchange* (2001)
87 Cal.App.4th 805 ................................................................................ 16

*Dynamex Operations W. v. Superior Court*
4 Cal. 5th 903, 954 (2018) ................................................................. 16,17

*Noe v. Superior Court*
237 Cal.App.4th 316 (2015) ................................................................... 10

*Pioneer Elecs. (USA), Inc. v. Superior Court*
40 Cal. 4th 360 (2007) ........................................................................... 19

*Ramirez v. Yosemite Water Co.* (1999)
20 Cal.4th 785 .................................................................................... 16,17

**FEDERAL CODES/STATUTES**

Fair Labor Standards Act ....................................................... 10,15,16,28

Rules Enabling Act, 28 U.S.C. § 2072(b) ............................................ 20

**STATE CODES/STATUTES**

Cal. Lab. Code § 1720.4(a) ..................................................................... 16

California's Private Attorneys General Act ........................................... 10

**OTHER AUTHORITIES**

29 C.F.R. § 553.101 ............................................................................... 15

7A Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 1769.1 (3d ed.
2018) ....................................................................................................... 25

Seventh Amendment ............................................................................... 20

*Ann. Manual for Complex Lit.* § 21.22 (4th ed. 2018) ......................... 18

Cal. Rules of Prof. Conduct Rule 5-210 ................................................ 27

FED. R. CIV. P. RULE 23 ......................................................................... 17

FED. R. CIV. P. Rule 23(a) ................................................................. 17,18

FED. R. CIV. P. Rule 23(a)(3) ................................................................ 20

FED. R. CIV. P. Rule 23(a)(4) ................................................................ 24

FED. R. CIV. P. Rule 23(b) ..................................................................... 17

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

**TABLE OF AUTHORITIES**
**(CONTINUED)**

2                                                                                    **Pages**

3   FED. R. CIV. P. Rule 23(b)(3) ............................................................. 17,21,22

4   Fed. R. Civ. P. 23(b)(3)(a)-(d) ................................................................. 23

5   FED. R. CIV. P. Rule 23(b)(3)(D) ............................................................. 19

6   *Newberg on Class Actions* §§ 3:70, 3:77.................................................. 25

7   1 William B. Rubenstein, *Newberg on Class Actions* § 3:70 (5th ed. 2018) ............... 25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# I.  <u>INTRODUCTION</u>

Defendant ZogSports Holdings, LLC ("ZogSports") opposes Plaintiffs Keith Ernst, Arthur Oganesyan, and Alan Nah's ("Plaintiffs") Motion for Conditional Collective Action Certification ("Motion"). Certification of this case is inappropriate.

Though Plaintiffs attempt to present this case as a garden-variety wage and hour dispute, it is not. This case is not an employment case at all. ZogSports is a recreational co-ed social sports league designed to increase social and community interaction and engagement among participants. Beginning in 2016, Plaintiffs, along with their counsel Danny Yadidsion, signed up to play Flag Football on Saturdays through ZogSports in the Santa Monica Beach league. Combined, Plaintiffs and their counsel played no less than thirty-two seasons through ZogSports. Plaintiff Ernst continues to play in the league. Proposed class counsel Mr. Yadidsion stopped playing in ZogSports leagues just weeks before filing this lawsuit. Prior to that Mr. Yadidsion had played 11 consecutive seasons in the Santa Monica Flag Football league.[1]

Plaintiffs and their counsel paid a registration fee, either individually or collectively as a team, to play in ZogSports Santa Monica Beach Flag Football league. The individual registration fee for participants generally was less than $100 per season. When Plaintiffs and their counsel registered to participate in ZogSports, they agreed to abide by certain community and league rules. These rules required showing up to scheduled games and occasionally designating a team member to serve as a Volunteer Referee ("VR") for games played by other teams in the league. On the occasions when participants would serve as their team's VR for other games, they did so pursuant to the "volunteer referee rule" in place in the league. In addition to the team VRs, ZogSports *always* provided an official referee for all games. The purpose of the "volunteer referee rule" was to increase participant engagement and interaction in the social sports leagues, which was a major component of what the league offered and provided. The league rules were available on ZogSports' website and contained the terms that were agreed to as

---

[1] Declaration of Michael Mortellaro ("Mortellaro Decl.") ¶¶ 4-5.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   part of the ZogSports community experience.[2]

2       Plaintiffs and their counsel have manufactured this frivolous lawsuit,[3] claiming an

3   employment relationship was formed between ZogSports and each participant who

4   registered, agreed to the league rules and served on behalf of their team as a VR. There

5   is no legal precedent for this claim, and its factual underpinning is equally specious.

6       Plaintiffs ask this Court to certify both a nationwide class and a California class.

7   Certification is not appropriate because the evidence demonstrates: (1) there is no

8   ascertainable class due to the lack of a feasible method of identifying putative class

9   members; (2) predominance is not satisfied due to the need for individual inquiries into

10  each participant's expectation of payment, or lack thereof; (3) Plaintiffs are not typical

11  nor are they adequate class representatives; (4) Plaintiffs are not similarly situated to

12  putative class members; (5) class treatment is not superior; and (6) Plaintiffs' counsel is

13  not adequate to represent the class.

14      Certification of Plaintiffs' proposed classes would require a detailed

15  individualized analysis as to each individual putative class member, including:

16      (1) Determination of which participants served as a Volunteer Referee

17      ("VR") during any given season, which is not documented in ZogSports'

18      records and will depend on the recollection of thousands of consumers;

19      (2) Determination of the dates and number of times each participant served

20      as a VR and for what duration of time;

21      (3) Determination of why each participant volunteered as a referee,

22      including whether or not the participant expected compensation or instead

23      acted for personal reasons/for their own benefit; and

24

25  _____
    [2] Mortellaro Decl. ¶¶ 6-9.

26  [3]  The operative Complaint alleges (1) failure to pay minimum wages and (2) failure to maintain accurate records under the
    Fair Labor Standards Act ("FLSA"); (3) failure to pay minimum wages, (4) failure to maintain required records, (5) failure

27  to provide accurate wage statements, (6) misclassification  and (7) waiting time penalties under California's Labor Code; (8)
    unlawful business practices and (9) penalties under California's Private Attorneys General Act ("PAGA"). However, there

28  is no private right of action for misclassification under § 226.8. *Noe v. Superior Court*, 237 Cal.App.4th 316 (2015).
    Plaintiffs have a pending Motion to Amend the Complaint, Dkt. No. 13, currently under submission.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

(4) If a participant indicates compensation was expected, determination of whether that expectation was reasonable and whether that expectation continued to be reasonable on each subsequent occasion the participant volunteered.[4]

This series of individualized inquiries demonstrates the insurmountable hurdles posed by Plaintiffs' Motion and are fatal to their assertions of predominance. The admissions made by Plaintiffs demonstrate their claims are not typical, nor do they view this case as important.[5] The close personal relationships between Plaintiffs and their counsel demonstrate that the interests of the putative class are not of paramount concern. Accordingly, the Motion should be denied in its entirety.

## II.   STATEMENT OF FACTS

On September 11, 2001, Robert Herzog ("Herzog") was minutes late to work on the 96th Floor of the World Trade Center.[6] As a result of his tardiness, he is alive today, though nearly all of his 300 co-workers did not survive.[7] In the wake of this tragedy, Herzog founded ZogSports in 2002 — a recreational co-ed social sports league designed to foster a sense of community in New York.[8] It subsequently expanded to 7 additional markets, creating community based social sports leagues in Los Angeles, San Francisco, San Jose, New York, New Jersey, Chicago, Atlanta and Washington, D.C. with a community of nearly 100,000 participants since 2014.[9]

## A.   League Participation and Rules

ZogSports was founded on three core ideals: sports, socializing, and charity.[10] At the end of each season, ZogSports makes a charitable donation on behalf of the

---

[4] I.e., if Plaintiff Ernst volunteered more than 30 times, could he have reasonably expected compensation each time though he never requested compensation before or after filing this lawsuit?

[5] Due to the short timeframe to file this Opposition, ZogSports was unable to depose the third proposed class representative, Keith Ernst. (Dkt. Nos. 38, 31.) *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975) (failing to allow necessary precertification discovery is abuse of discretion).

[6] Declaration of Amber S. Healy ("Healy Decl") ¶¶ 4, Exh. A (Deposition of Michael Mortellaro) p. 49:8-12.

[7] Healy Decl. Exh. A, p. 49:12-13.

[8] Healy Decl. Exh. A, pp. 49:3-6; 50:5.

[9] Healy Decl. Exh. A, p. 19:15-17; 50:5; Mortellaro Decl. ¶ 3. Plaintiffs ignore that certain markets, like San Jose *never* had a VR; San Francisco and Atlanta eliminated the VR rule two years ago. (Healy Decl. Exh. A, p. 62:13-16; 131:19-21.)

[10] Healy Decl. Exh. A, p. 50:1-3.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

championship team to their designated charity.[11] Since its founding, ZogSports has donated approximately 3.5 million dollars to charities under this model.[12] Additionally, in keeping with its goal of increasing social and community interaction and engagement among participants, ZogSports had a rule for teams in certain leagues (predominantly co-ed football) to provide a VR for another team's game immediately before or after their own game.[13] This provided an opportunity to meet and socialize with other teams and players.  If a team did not provide a VR, the game still proceeded as ZogSports always provided an official referee for each game.[14] There were no financial or other negative consequences for any individual participant who chose not to serve as their team's designated VR.[15] VRs functioned simply as "one more pair of eyes on the field."[16] VRs did not make substantive calls or decisions, enforce rules, or otherwise perform the functions of official referees.[17] It was the official referee who controlled the flow of the game, watching over both the players and the VRs, tracked/reported injuries and incidents, and reported game scores to ZogSports.[18] The use of VRs was not consistent in every market, and has been discontinued in all markets.[19] ZogSports has never received complaints that VRs should have received compensation, other than the instant action.[20]

**B.    Participant Registration and Tracking**

Participants registered for ZogSports either individually or as a full team. Individuals registered as a "free agent" through ZogSports' website, and could ask to be paired with other players.[21] By contrast, participants purchasing teams registered as team

---

[11] Healy Decl. Exh. A, p. 55:13-23
[12] *Id.* at pp. 50:23-51:1.
[13] *Id.* at pp. 76:1-7; 89:16-24; 94:14-21; 128:10-131:25.
[14] *Id.* at pp. 76:13-17; 79:6-7; 234:7-12.
[15] See *id.* at pp. 234:7-20; 248:4-17.
[16] *Id.* at pp. 76:9-12; 78:7-14; 96:1-4.
[17] *Id.* at pp. 78:7-14; 77:7-78:2; 95:16-25; 192:20-193:24.
[18] *Id.* at pp. 76:18-77:6; 196:7-22; 197:15-198:7; 198:17-19; 266:25-267:6.
[19] *Id.* at pp. 63:3-9; 235:13-236:2; 236:19-24; 237:7-15.
[20] *Id.* at p. 103:11-16; Mortellaro Decl. ¶ 10.
[21] *Id.* at pp. 57:23-58:17.

1   captains and provided their own rosters.[22] Team captains were asked to provide names
2   and e-mail addresses of their players, but often did not.[23] These "full teams" account for
3   approximately 80 percent of ZogSports' participants.[24]

4       ZogSports did not track who actually played in each game.[25] **Thus, ZogSports**
5   **has no records reflecting which of its 100,000 participants since 2014 played or**
6   **served as VRs for any particular game, in any of the eight markets it operates**
7   **nationwide.**[26] ZogSports cannot identify any putative class members from its records.[27]

8   ### III.   PLAINTIFFS WERE NEITHER EMPLOYEES NOR VOLUNTEERS

9       Plaintiffs presume the words "volunteer referee" in ZogSports' league rules mean
10  the Court must conclude participants were legally misclassified as volunteers in the
11  rubric of employment law. Not so. The mere fact that ZogSports called the participant
12  referee a "volunteer referee" is of no legal significance and cannot be presumed to create
13  an employment relationship. As the Eighth and Fifth Circuits have explained when
14  looking at the dictionary's definition of employee, employer, and employ:

15      Central to the meaning of these words is the idea of compensation in
16      exchange for services: an employer is someone who pays, directly or
17      indirectly, wages or a salary or other compensation to the person who
18      provides services—that person being the employee. Compensation by the
19      putative employer to the putative employee in exchange for his services is
20      not a sufficient condition, but it is an essential condition to the existence of
21      an employer—employee relationship.[28]

22  ---

[22] *Id*. at pp. 56:17-57:4; 143:11-144:8.
[23] *Id*. at pp. 143:11-144:20.
[24] *Id*. at p. 145:19-23.
[25] *Id*. at pp. 143:11-14; 156:10-23.
[26] *Id*. at pp. 141:3-20; 143:11-14; 150:11-13; 156:10-23.
[27] Plaintiffs allege ZogSports could "use existing records to compile a list of all individuals, including last-known contact information, who may have potentially volunteered as football referees." Not so. **Mortellaro testified only that ZogSports could compile a list of all registered participants in leagues which utilized VRs** (*Id*. at pp. 147:24-150:13.) This must be understood in light of Mortellaro's other testimony: team captains were not required to submit contact information for their players; ZogSports never verified the accuracy of information from team captains; and ZogSports did not track who actually played in any given game. ZogSports does not have contact information for most of these individuals, and cannot identify who may have played in, or volunteered for, any given game (assuming *anyone* volunteered).
[28] *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 436 (5th Cir. 2013) citing *Graves v. Women's Prof. Rodeo Ass'n,*

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    The Eighth Circuit analyzed whether an employment relationship existed between

2    a club and its members (analytically very similar to a sports league like ZogSports and

3    its paying participants), and concluded "the relationship between [the club] and its

4    members simply bears no resemblance to that between an employer and employee

5    within the accepted usage of those terms: no compensation is made…"[29] In *Graves* the

6    court explained "the idea of compensation in exchange for services…is an essential

7    condition to the existence of an employer-employee relationship."[30]

8    As in *Graves*, it is only by Plaintiffs' "skipping this crucial and elementary initial

9    inquiry-whether there exists an employment relationship, according to the ordinary

10   meaning of the words-and jumping straight into verbal manipulation of the case law

11   tests for an employment relationship, [that Plaintiffs] can make an implausible argument

12   sound even marginally plausible." Plaintiffs contend the "right to control" test applies

13   but as the *Graves* Court astutely noted:

14       [The club] does exercise some degree of control over its members through

15       its various rules and regulations. But in the same manner, a university

16       exercises control over its students-and application deadlines and other

17       requirements constitute "control" over merely potential students. Similarly,

18       American Express sets rules for its cardmembers as well as for participating

19       vendors, but neither of these are its employees.[31]

20   Plaintiffs were not misclassified volunteers and were not employees. Plaintiffs, of

21   their own volition and for their own pleasure, signed up and paid for a community social

22   sports league experience with ZogSports. Part of that experience was participation in the

23   league through playing in games and occasionally providing a VR on behalf of their

24   team. Under both state and federal law, Plaintiffs and other participants never had an

25   employment relationship with ZogSports.

26

27   *Inc.*, 907 F.2d 71 (8th Cir. 1990).
     [29] *Graves,* 907 F.2d. at 73.

28   [30] *Id.*
     [31] *Id.*

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

## A.   California and Federal Legal Standards For Volunteers

If the Court is inclined to analyze Plaintiffs' paid engagement in a social sports league as an employment relationship or under the legal volunteer rubric, the law does not support their theory of the case. While Plaintiffs assert federal and state law prohibits *anyone* from volunteering services for a for-profit entity,[32] such a position is contrary to U.S. Supreme Court authority validating volunteer activity for for-profit entities, and defining that activity in clear terms. California law is in accord.

The FLSA "defines 'employ' as including 'to suffer or permit to work' and…defines 'employee' as 'any individual employed by an employer.'" [33] As articulated by the Supreme Court more than 70 years ago: "**The definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another.**" [34] "**[S]uch a construction would sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit.**"[35]   Accordingly, the Supreme Court defined a volunteer in 1985 as **"[a]n individual who, 'without promise or expectation of compensation, but solely for his personal purpose or pleasure, work[s] in activities carried on by other persons either for their pleasure or profit.'"**[36]

Authorities applying *Alamo* and *Walling* have concluded the "totality of the circumstances" must be examined in evaluating whether volunteers for a for-profit entity are entitled to payment, and cases considering volunteer classification **consistently**

---

[32] In addition, Plaintiffs' cases concern trainees, not volunteers, which are inapplicable. See, e.g. *McLaughlin v. Ensley*, 877 F.2d 1207, 1210 (4th Cir. 1989); *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 521 (S.D.N.Y. 1998); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 470 (11th Cir. 1982); *Wirtz v. Wardlaw*, 339 F.2d 785, 787 (4th Cir. 1964).

[33] *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947).

[34] *Id.* (bold added).

[35] *Id.* (bold added).

[36] *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 285 (1985) (quoting *Walling,* 330 U.S. at 152 (bold added); see also *Okoro v. Pyramid 4 Aegis*, 2012 WL 1410025, at *6 (E.D. Wis. 2012); *Jeung v. Yelp, Inc.*, 2015 WL 4776424, at *2 (N.D. Cal. 2015).) The word "solely" was eliminated by 29 C.F.R. § 553.101. (See *Purdham v. Fairfax Cty. Sch. Bd.*, 637 F.3d 421, 429 (4th Cir. 2011).) Current requirement is that "the individual must be motivated by civic, charitable or humanitarian reasons, at least in part." (*Id.*)

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   **evaluate the expectation of payment**.[37]

2       Contrary to Plaintiffs' representations, there is no authority prohibiting volunteer

3   work for a for-profit entity.[38] Accordingly, as explained by the Eastern District of

4   California, the assertion that no volunteer work may be provided to a for-profit entity is

5   contrary to federal law.[39]

6       Similarly, contrary to Plaintiffs' contentions, there is no California authority

7   prohibiting volunteer work for a for-profit entity.[40] There is no also California authority

8   that addresses classification of volunteers under the Labor Code.[41] "Where California

9   and federal employment laws do not materially diverge, California courts may look to

10  the FLSA and federal decisions for guidance."[42]

11      Plaintiffs' reliance on the California Supreme Court's decision in *Dynamex*

12  *Operations W. v. Superior Court*, 4 Cal. 5th 903, 954 (2018) is misplaced. *Dynamex*

13  concerned the definition of "suffer or permit" under California's Wage Orders and was

14

15  [37] *Okoro*, 2012 WL 1410025 at *6 (considering factors such as expectation of compensation); *Rhea Lana, Inc. v. U.S. Dep't of Labor*, 271 F. Supp. 3d 284, 291 (D.D.C. 2017) (expectation of benefit).

16  [38] The Department of Labor (O.L. September 11, 1995) says otherwise: "[W]e have considered as volunteers, and not employees, individuals who perform activities of a charitable nature for a for-profit hospital, where the hospital does not derive any immediate economic advantage from the activities of the volunteers and there is no expectation of compensation."

17

18  [39] "Plaintiff…relies on…the United States Department of Labor's website discussing 'Volunteers,' stating…'employees may not volunteer services to for-profit private sector employers.' However, such reliance is misplaced, because the quoted statement does not stand for the proposition that no individual could ever volunteer for a for-profit business. Instead, the statement indicates that 'employees may not volunteer services to for-profit private sector employers.' [ ] The statement presumes an existing employment relationship, and thus indicates that a current employee cannot volunteer his or her services to the for-profit employer. That rule is to prevent for-profit employers from using their superior bargaining power to coerce employees into volunteering their time instead of receiving overtime pay and other protections. See *Alamo*, 471 U.S. at 302 ('If an exception to the Act were carved out for employees willing to testify that they performed work "voluntarily," employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act.'). The quoted statement does not inform the analysis of whether plaintiff here is an employee under the FLSA in the first instance. Moreover, the website printout is not binding authority, and as interpreted by plaintiff, would actually conflict with United States Supreme Court precedent, which made clear that '[a]n individual who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit, is outside the sweep of the Act.' *Alamo*, 471 U.S. at 295. Thus, the fact that plaintiff worked in a for-profit business does not mean that plaintiff must have been an employee for purposes of the FLSA." *Patel v. Patel*, 2014 WL 6390893, at *8 (E.D. Cal. 2014).

25  [40] Cal. Lab. Code § 1720.4(a), cited by Plaintiffs in support of the incorrect claim no one can volunteer outside of the non-profit context, stands only for the proposition that volunteers are exempt from prevailing wage laws in the context of public works projects. Importantly, § 1720.4 confirms a volunteer is someone who performs work "without promise, expectation, or receipt of any compensation for work performed."

27  [41] See *In re Am. Online Cases*, 2005 WL 1249228 at *8 (Cal. Ct. App. 2005) (state law applicable to classification of volunteers under the Labor Code is unclear).

28  [42] *In re Am. Online Cases*, 2005 WL 1249228 at *9, citing *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 812-818; *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 798.

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

concerned with independent contractor classification, not volunteers. *Dynamex* expressly rejected application of the economic realities test as applied to the independent contractor analysis, because it found a multifactor test inappropriate in that context.[43] *Dynamex* says nothing about application of the economic realities test to volunteers. *Dynamex* is neither factually or legally analogous to the issues presented here. Rather, the applicable standard is that of *Alamo* and *Walling*.

## IV.   PLAINTIFFS' CLAIMS ARE NOT SUITABLE FOR CLASS TREATMENT UNDER FRCP RULE 23.

Plaintiffs fail to meet their burden under Rule 23. For certification, Plaintiffs bear the heavy burden of establishing <u>each</u> of the prerequisites in Rule 23(a).[44] A class must also satisfy one of subsections under Rule 23(b). Here, Plaintiffs seek to maintain a class under Rule 23(b)(3), which requires a showing of "predominance" and "superiority."[45]

Rule 23 is not simply a pleading standard.[46] Plaintiffs bear a heavy burden to satisfy the rigorous analysis required at class certification and must demonstrate the requirements of Rule 23 will continue to be satisfied.[47] "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.' [ ] That is so because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"[48] Here, Plaintiffs have not met and cannot meet their burden; therefore, their Motion should be denied.

## A.   MEMBERS OF PLAINTIFFS' PROPOSED CLASSES ARE NOT ASCERTAINABLE.

Plaintiffs cannot demonstrate an ascertainable class where there is no reliable method of ascertaining which participants are class members. ZogSports has no way to

---

[43] *Id.* (finding merit in concerns about disadvantage "inherent in relying upon a multifactor, all the circumstances standard for distinguishing between employees and independent contractors.")

[44] *Hanon v. Dataproducts, Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

[45] These requirements are commonly referred to as "predominance" and "superiority." See *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363, (2011).

[46] *Dukes*, 564 U.S. 338, 350 (2011).

[47] *Dukes*, 564 U.S. at 350- 51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)); See *Marlo v. U.P.S.*, 639 F.3d 942, 947 (9th Cir. 2011).

[48] *Comcast Corp. v. Behrend,* 569 U.S. 27, 33–34 (2013) quoting *Gen. Tel. Co. of Sw.,* 457 U.S. at 160–161.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

identify which participants ever served as VRs.[49] Plaintiffs suggest participants can "self-identify,"[50] but this was rejected by this Court in a similar context as unworkable.[51]

An implicit threshold requirement for Rule 23(a) is that Plaintiffs <u>must</u> demonstrate an identifiable and ascertainable class.[52] The class description must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member."[53] Certification is inappropriate where "ascertaining class membership necessitates an unmanageable individualized inquiry."[54]

Accordingly, this Court has denied certification where there is no "reliable method of ascertaining" who is part of the class because "no reliable documentary evidence exists."[55] In *Martinez*, the putative class included individuals who "personally serviced" a territory as truck drivers and excluded drivers who hired helpers. The defendant did not maintain records of which drivers utilized helpers and had "no way of knowing whether a driver [was] personally servicing his route…." Despite the claim that putative class members could "self-identify," the Court found drivers did not uniformly maintain such records and it would have to rely on "piecemeal anecdotal evidence and individual drivers' memories dating back three years." The Court concluded, under the facts, the proposed class did not satisfy the ascertainability requirement.[56]

---

[49] Plaintiffs ask the Court to order ZogSports to produce a class list (Mtn, Dkt. No. 27-1, p. 25.)  Plaintiffs' Motion to Compel the class list is set for hearing before Magistrate Wilner on January 23, 2019. (Dkt. No. 14.)

[50] Motion, Dkt. No. 27-1, p. 23:10-11 ("Individuals will be able to self-identify regarding their participation as Volunteer Referees."); See also *Ann. Manual for Complex Lit*. § 21.22 (4th ed. 2018) (requirement that class members self-identify is inherently suspect," citing *Ault v. J.M. Smucker Co*., 310 F.R.D. 59 (S.D.N.Y. 2015)).

[51] *Martinez v. Flower Foods, Inc., 2016 WL 10746664 (C.D. Cal. Feb. 1, 2016)*, at *6.

[52] *Pryor v. Aerotek Sci., LLC*, 278 F.R.D. 516, 523 (C.D. Cal. 2011).

[53] *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

[54] *Daniel F. v. Blue Shield of California*, 305 F.R.D. 115, 125 (N.D. Cal. 2014), citing *Tietsworth v. Sears, Roebuck & Co*., 2013 WL 1303100, at *3–4 (N.D. Cal. Mar. 28, 2013).

[55] *Martinez*, 2016 WL 10746664, at *8.

[56] *Id.*; See also *Daniel F.*, 305 F.R.D. at 125 (no ascertainable class where defendant's records did not readily identify putative class members and would require individualized analysis); *Senne v. Kansas City Royals Baseball Corp*., 315 F.R.D. 523, 566 (N.D. Cal. 2016) (ascertainability not satisfied where membership in the class was "impossible to determine from official records" and "would depend largely upon the players' ability to remember…what they did."); and *Najarian v. Avis Rent A Car Sys*., 2007 WL 4682071, at *3 (C.D. Cal. 2007), in which this Court found no ascertainable class where defendant "had "no internal means of ascertaining which customers" would be in the class and an individualized inquiry would be required to determine "which customers were 'consumers' within the meaning of the statute." The extreme difficulty in identifying class members, paired with additional customer-specific inquiry to determine who was within the proposed class, meant "prerequisite individual factual determinations negate[d] the judicial economy benefits deriving from class treatment." This Court denied certification, noting other courts had done so on the same grounds.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

ZogSports did not require any specific participants to serve as VRs; instead, it was left to teams to determine who would VR and how the team would decide. Teams asked to provide VRs were identified on a game schedule, but that schedule does not indicate (a) who the VR was or (b) if a VR showed up at all. The VR was not identified on any information maintained by or provided to ZogSports. If the designated team did not provide a VR, the game would proceed with ZogSports' official referee.[57] Like the defendant in *Martinez* and other cases described above, **ZogSports has no means of identifying who, among its 100,000 participants ever served as a VR for any of its games across any of its leagues across the country.**

## 1.   Requiring Class Members to Self-Identify for Inclusion in the Class Is Untenable and Violates Due Process.

As in *Martinez*, Plaintiffs' suggestion that class members can "self-identify" is unworkable. Oganesyan and Nah admitted they have no records of when they served as VRs and have no independent recollection of the dates they served as VRs.[58] Plaintiffs' self-identification proposal improperly asks this Court to rely on "piecemeal anecdotal evidence and individual…memories" to the extent such memories even exist.[59] "Plaintiffs have not established how they will accurately identify all class members ever" and this flaw is fatal to their bid for certification.[60] Both the Ninth Circuit and the U.S. Supreme Court have confirmed that while self-identification *may* be permitted in the context of a *settlement-only* class, "settlement classes need not satisfy Rule 23(b)(3)(D)'s 'manageability' requirement.'"[61]

In addition, if class members are permitted to self-identify through declarations or claims forms (through inadmissible hearsay) following judgment such a process would

[57] This is not a situation in which ZogSports has documented complaints about the use of volunteer referees. ZogSports has never received any complaints about or from its volunteers, other than the Complaint filed in this matter. Mortellaro Decl., ¶ 10. (cf. *Pioneer Elecs. (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 371 (2007), in which putative class members had already complained to the defendant about an allegedly defective product).
[58] Healy Decl. ¶ 5, Exh. B, pp. 92:9-16; 95:22-96:1; 97:4-22; 99:1-4; Healy Decl. ¶ 6, Exh. C, p. 79:6-14.
[59] *Martinez*, 2016 WL 10746664 at *6.
[60] *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, fn. 20 (N.D. Cal. 2014).
[61] *Martin v. Pacific Parking Sys. Inc.*, 583 Fed.Appx. 803, fn. 3 (9th Cir. 2014), citing to *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

violate ZogSports' Seventh Amendment and due process rights.[62] ZogSports must have a meaningful opportunity to contest and question those who self-identify to determine if, for example, they had any expectation of pay, if so, was it reasonable, why did they have that expectation, and when did they have that expectation — here, the self-identification is not used to establish damages but would be used to establish liability and an element of Plaintiffs claim.[63] That "plaintiffs seek class certification provides no occasion for jettisoning the rules of evidence and procedure, the Seventh Amendment, or the dictate of the Rules Enabling Act, 28 U.S.C. § 2072(b)."[64]

## B.   TO ASSERT A COLORABLE CLAIM THEY SHOULD HAVE BEEN PAID EMPLOYEES, PLAINTIFFS MUST HAVE AN EXPECTATION OF PAY.

Rule 23(a)(3) requires the claims of the representative plaintiff be typical of the claims of the class. "Typicality" implicitly requires the named plaintiff be a member of the class he purports to represent.[65] Class representatives must "possess the same interest and suffer the same injury" as the unnamed class members.[66] Further, a plaintiff seeking to represent a class must establish standing.[67]

A plaintiff cannot establish typicality if unique defenses interfere with his ability to prove elements of his claim. For example, the proposed class representative in *Hanon* could not show his claims were typical of the class where he would have had unique difficulty proving reliance.[68] The court noted "[b]ecause of [his] unique situation, it is predictable that a major focus of the litigation will be on a defense unique to him."[69]  His interests did not align with those of the putative class and typicality was not satisfied.[70]

Plaintiffs are unable to demonstrate typicality given that both Oganesyan and Nah

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

---

[62] *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018)
[63] *Id.* ("to…presume that these plaintiffs can rely on unrebutted testimony in affidavits to prove injury-in-fact is fatal to plaintiffs' motion to certify this case.")
[64] *Id.* citing to *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1048 (evidence may not be used in a class action to give "plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action.").
[65] *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962).
[66] *Gen. Tel. Co. of Sw.*, 457 U.S. at 156.
[67] *Doe v. Unocal Corp.*, 67 F.Supp.2d 1140, 1142 (C.D.Cal.1999).
[68] *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).
[69] *Id.* at 509.
[70] See *id.*

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

admit they had no expectation of payment.  Therefore, they cannot be members of the class.[71] Ernst's declaration is silent on this point, so he has failed to demonstrate he can satisfy the legal requirements for compensation as well. Oganesyan acknowledged expecting payment was unreasonable[72] and Nah admitted he did not know if other VRs felt the same way he did about being entitled to compensation.[73] Nonetheless, this lack of standing is fatal to typicality. Oganesyan's testimony that no expectation of payment would have been reasonable places him at odds with the interests of a class seeking compensation for their refereeing activities when they were participants in the league.

Tellingly, Plaintiffs submit no declarations other than their own.[74] After playing more than 11 seasons each, apparently neither Ernst nor Plaintiffs' counsel were able to locate another VR who would submit a declaration in support of their case. Typicality is not satisfied.

## C.   PLAINTIFFS CANNOT DEMONSTRATE PREDOMINANCE, SUPERIORITY OR MANAGEABILITY WHERE INDIVIDUAL INQUIRIES INTO EXPECTATION OF PAYMENT ARE REQUIRED.

The inquiries into whether each VR expected compensation, and whether that expectation was reasonable, constitutes precisely the type of predominant inquiry that has led district courts to deny certification. This must be the result here.

Predominance under Rule 23(b)(3) asks whether proposed classes are "sufficiently cohesive to warrant adjudication by representation."[75] Unlike commonality, predominance focuses on the relationship between the common and individual issues.[76] Importantly, predominance is a more demanding inquiry than commonality: Rule 23(b)(3) requires common questions predominate.[77] Predominance is determined not by counting the number of common issues but by weighing their significance; "the Court

---

[71] Healy Decl. Exh. B, pp. 142:18-143:21, 162:11-163:2; Healy Decl. Exh. C, pp. 94:17-20, 119:6-12.
[72] Healy Decl. Exh. B, pp. 142:18-143:21.
[73] Healy Decl. Exh. C, p. 112:18-22.
[74] *Gravestock v. Abilene Motor Express, Inc.*, 2018 WL 1620885 (C.D. Cal. 2018).
[75] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citing *Amchem*, 521 U.S. at 619.
[76] *Hanlon*, 150 F.3d at 1022.
[77] *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577 (S.D. Cal. 2013), citing *Amchem*, 521 U.S. at 623 ("predominance" requirement is "far more demanding" than "commonality").

must determine whether **the most significant issues** are predominant."[78]

Where plaintiffs must "introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)."[79] For example, where each VR's expectation of compensation must be determined on an individual basis, individualized issues predominate:

> **[T]he trier of fact must determine whether there was an express or implied promise of compensation, whether the class member had an expectation of compensation or worked solely for his or her personal purposes or pleasure. As the trial court noted, this requires an inquiry into each class member's expectations and intentions when they became Community Leaders. The evidence established that each of the Community Leaders undertook their volunteer activities for different reasons and received different benefits from their activities.**[80]

The Sixth District Court of Appeals, thus, denied class certification in an action nearly identical to this one. The same result must issue here: even if some method of identifying VRs is found, this Court must evaluate whether each VR served with the expectation of payment, or did so for personal purposes as it was part of the experience they signed up for and paid for. This will require an inquiry into each VR's state of mind and whether any expectation of payment was reasonable. Where Oganesyan and Nah have already testified they volunteered without expectation of payment, and believe such an expectation would have been unreasonable, this inquiry not only necessary, it is critical. As the most significant issue in this matter, this individualized inquiry plainly predominates and bars certification.

Disregard of the predominance requirement by certifying a class here would violate ZogSports' due process rights. Certification cannot be used to defeat ZogSports'

---

[78] *Konik v. Time Warner Cable*, 2010 WL 8471923, at *4 (C.D. Cal. 2010) (bold added).
[79] *McKinsty v. Swift Transportation Co. of Arizona, LLC*, 2017 WL 10059288, at *7 (C.D. Cal. 2017).
[80] *In re Am. Online Cases*, 2005 WL 1249228 at *13 (bold added).

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

right to challenge elements of liability.[81] In *Asacol*, the court overturned certification of a class of consumers allegedly subjected to a drug manufacturer's anti-competitive conduct where the proposed method of identifying injured class members effectively eliminated the defendant's right to challenge the element of injury. The court explained:

> …this is a case in which any class member may be uninjured, and there are apparently thousands who in fact suffered no injury. The need to identify those individuals will predominate and render an adjudication unmanageable absent evidence such as the unrebutted affidavits assumed in *Nexium*, or some other mechanism that can manageably remove uninjured persons from the class in a manner that protects the parties' rights.[82]

The evidence suggests only a small percentage of ZogSports participants ever served as VRs;[83] presumably, some smaller percentage expected compensation. (Again, two of the three proposed class representatives admit they did not expect compensation.) Permitting VRs to "self-identify," as Plaintiffs propose,[84] eliminates ZogSports' ability to challenge their reasonable expectation of payment.

Further, a class action is not a superior method of resolving claims where individualized inquiries — like the inquiries implicated here — are required.[85] A class action may be superior where class treatment of common issues reduces costs and promotes efficiency, but the presence of individual issues makes it more difficult for the court to manage the class action.[86] Accordingly, "a class action is improper where an individual class member would be compelled to try 'numerous and substantial issues to establish his or her right to recover individually, after liability to the class is

---

[81] *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018), citing *Dukes*, 564 U.S. at 367.

[82] *Id*. at 53-54.

[83] Oganesyan testified he, Ernst, Plaintiffs' counsel and one other player were the only VRs he could recall from their team in 3 seasons. (Healy Decl. Exh. B, pp. 92:9-94:14.) Even if Oganesyan was a class member (which he is not), this suggests less than 40 percent of his team would even potentially be part of the class. *Id*. at 73:10-74:22 (10-11 players/game). **The vast majority of ZogSports' participants will not be class members.**

[84] Motion, Dkt. No. 27-1, p. 23:10-11.

[85] See Fed. R. Civ. P. 23(b)(3)(a)-(d).

[86] *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 248 (C.D. Cal. 2007), citing *In re N. Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982), as amended (July 15, 1982), abrogated on other grounds by *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir.1996).

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

established.'"[87] By way of illustration, in *Pollack v. Foto Fantasy, Inc.*, 2010 WL 11595486, at *4 (C.D. Cal. 2010), this Court determined that evaluation of whether the defendant's conduct was "highly offensive" to each member of the putative class, thereby entitling each person to monetary recovery, raised manageability concerns.

A determination whether VRs should have been paid requires inquiry into their subjective state of mind regarding expectation of pay, and if it existed, whether that was reasonable. **Oganesyan and Nah admitted they had no expectation of payment.**[88] Oganesyan believed expecting payment for serving as a VR was unreasonable.[89] Given these facts, the Court will need to conduct thousands of individual mini-trials to determine liability and damages. This is antithetical to the class action device.

As noted by the Eastern District, where there is no promise of compensation (as Plaintiffs admit here), "[n]o rational trier of fact could find that [a plaintiff] expected to be compensated despite working for several years without being paid and having not a single discussion with defendants regarding payment."[90] Plaintiffs have not shown, and cannot show, an ascertainable class.

Furthermore, the individual evaluation of whether each participant nationwide is entitled to compensation raises manageability concerns indicating a class action is not superior.[91] The individual issues that predominate here with respect to the identification of VRs and evaluation of their subjective states of mind, followed by an inquiry into whether that state of mind was reasonable, must result in a denial of class certification.

**D.    PLAINTIFFS AND THEIR COUNSEL ARE INADEQUATE.**

Rule 23(a)(4) requires the representative parties "fairly and adequately protect the interest of the class."[92] The central inquiry is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members."[93] "Close relationships

---

[87] *Maddock*, 248 F.R.D. at 248, citing *Valentino*, 97 F.3d 1227 and *Dalkon Shield*, 693 F.2d at 856.
[88] Healy Decl. Exh. B, pp. 142:18-143:21, 162:11-163:2; Healy Decl. Exh. C, pp. 94:17-20, 119:6-12.
[89] Healy Decl. Exh. B, pp. 142:18-143:21.
[90] *Patel*, 2014 WL 6390893, at *7.
[91] ZogSports' Objections to Plaintiffs' Proposed Trial Methodology Statement raises other manageability issues.
[92] Fed. R. Civ. P. 23(a)(4).
[93] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

- 24 -
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

between the class representative and counsel, whether personal or professional," create conflicts that render class representatives inadequate to protect the class."[94]

Here, Plaintiffs' testimony raises serious concerns about their adequacy as class representatives and the adequacy of their counsel, such that certification must be denied.

### 1.   Plaintiffs Are Not Adequate Class Representatives

The importance of a class representative free from conflict with the putative class cannot be understated. "Scrutinizing for conflicts is essential to guard the due-process right of absent class members not to be bound to a judgment without adequate representation by the parties participating in the litigation."[95] Adequacy is "perhaps the most significant of the prerequisites to a determination of class certification."[96]

Importantly, a class representative must "monitor class counsel so as to ensure that counsel does not accept a relatively weak class recovery in return for the promise of a large fee."[97] If the class representative does not, "the class loses one check on counsel's capacity to sell out the class's claims,"[98] and "[p]ermitting class counsel who are not effectively monitored to prosecute a class action is the functional equivalent of allowing that counsel to serve as both class representative and class attorney…"

The Northern District has denied class certification on adequacy grounds, where the proposed class representative's "close association with class counsel suggests that he is 'more interested in maximizing the "return" to his counsel than in aggressively presenting the proposed class' action."'"[99] The court found the possibility that the plaintiff was "helping a business associate at the expense of the class—casts doubt on whether plaintiff will fairly and adequately protect the interests of the entire class."[100]

---

[94] *Woods v. Google LLC*, 2018 WL 4030570, at *4 (N.D. Cal. 2018), citing 1 William B. Rubenstein, *Newberg on Class Actions* § 3:70 (5th ed. 2018) and *Kesler v. Ikea U.S. Inc.*, 2008 WL 413268, at *5 (C.D. Cal. 2008).

[95] *Woods*, 2018 WL 4030570, at *4, citing *Gen. Tel. Co. of Sw.*, 457 U.S. at 158 n.13; *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940); and 7A Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 1769.1 (3d ed. 2018).

[96] *Flores v. EP2, Inc.*, 2011 WL 13213897, at *4 (C.D. Cal. 2011).

[97] *Woods*, 2018 WL 4030570, at *4, citing *Newberg on Class Actions* §§ 3:70, 3:77.

[98] *Id.*; *In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257, 260 (N.D. Cal. 1996).

[99] *Woods*, 2018 WL 4030570, at *6; see also *Douglas v. Talk Am. Inc.*, 2009 WL 10669481, at *7 (C.D. Cal. 2009).

[100] *Shields v. Wash. Bancorporation*, 1991 WL 221940, at *2 (D.D.C. Oct. 10, 1991); see also *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014) ("There ought therefore to be a genuine arm's-length relationship between class counsel and the named plaintiffs.").

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Here, all three plaintiffs were teammates with Plaintiffs' counsel. Oganesyan was recruited to play by Ernst (who supervises Oganesyan at his current job).[101] Plaintiffs' counsel recruited Nah (his best friend) to participate.[102] Oganesyan knows nothing about this matter, other than it is a "labor dispute," and does not understand his obligations as class representative; Nah made similar statements.[103] Neither investigated Plaintiffs' counsel's qualifications as an attorney or spoke with any other attorneys about handling this matter.[104] Nah believed he could satisfy his obligations as a class representative by following the instructions of his counsel, and admitted he did not think the lawsuit was important.[105] Finally, both confirmed filing the lawsuit against ZogSports was Plaintiffs' counsel's idea – it never occurred to them that they might be owed compensation.[106]

Oganesyan and Nah are participating in this case at Plaintiffs' counsel's behest and are relying on their friend's so-called expertise. <u>This is the precise reason for emphasizing the importance of adequate class representatives</u>. As class representatives, Plaintiffs are responsible for monitoring counsel's behavior and ensuring the interests of the *class* are held in higher regard than his interests. This is not so here.[107]

### 2.    <u>Plaintiffs' Counsel Cannot Adequately Represent the Class.</u>

Plaintiffs' counsel's close friendship, aside, there are serious concerns about his experience and ability to represent a nationwide class. This case appears to be the first counsel filed after he opened a solo practice.[108] It appears counsel recruited his friends to serve as plaintiffs in his first case as a plaintiffs' attorney.[109] In addition to the concerns

---

[101] Healy Decl. Exh. B, p. 46:2-9; 76:14-23. Oganesyan further testified Ernst, the team captain, managed the team's VR selection each week. Ernst's control over the VR selection process for Plaintiffs' team raises (at the very least) a significant conflict of interest between Ernst and Oganesyan, to the extent Plaintiffs assert "employer" control. *Id.* at pp. 86:6-88:17.
[102] Healy Decl. Exh. C, pp. 24:25-25:6; 48:7-15.
[103] Healy Decl. Exh. B, pp. 175:6-20; 177:4-17; 190:4-191:3; Healy Decl. Exh. C, p. 131:13-25.
[104] Healy Decl. Exh. B, pp. 155:2-23; 198:16-199:2; 204:2-25; 205:8-206:9; Healy Decl. Exh. C, p. 148:8-11
[105] Healy Decl. Exh. C, pp. 29:4-18; 145:16-146:6
[106] Healy Decl. Exh. B, p. 165:11-22; Healy Decl. Exh. C, pp. 119:13-22; 147:23-148:7.
[107] ZogSports anticipates Ernst, whom it was denied the opportunity to depose, will present substantially different testimony in a new declaration. His bare-bones declaration is virtually silent on these points. Declaration of Ernst, ¶ 6.
[108] Indeed, Oganesyan testified Plaintiffs' counsel was building his case against ZogSports while he was still working as a defense attorney, in June 2018. (Healy Decl. Exh. B, pp. 150:22-151:11.)
[109] The ethical implications of Plaintiffs' counsel's conduct, *Seig v. Yard House Rancho Cucamonga, LLC,* 2007 WL 6894503, at *7 (C.D. Cal. Dec. 10, 2007), have been effectively obscured thus far by his refusal to permit his clients to identify whose idea it was to file the instant lawsuit. (Healy Decl. Exh. B, pp. 150:22-151:20; 198:3-15; 201:5-12.)

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  raised by these facts, Plaintiffs' counsel is also a <u>member of the class and a witness</u>, and

2  should be barred from serving as class counsel on that separate ground.

3      Because named class members must act through class counsel, adequacy of

4  representation turns in part on the competency of counsel and in part on the absence of

5  conflicts of interest.[110] Even "the appearance of divided loyalties" or "potential

6  conflicts" can be disqualifying.[111] Many courts have adopted a *per se* rule automatically

7  disqualifying an attorney from serving as both class counsel and class member or

8  representative, reasoning that under no circumstances could counsel fairly and

9  adequately represent the interests of the class.[112] Even courts which have not adopted a

10 *per se* rule have found the practice of serving as both class counsel and class

11 representative improper.[113] A class member not identified as a class representative also

12 "may exert such influence over class representatives and other class members as to be

13 found a '*de facto* representative…'"[114]

14      Further, an attorney may not represent a class in a case in which he is a potential

15 witness.[115] As noted in *Bachman*, in which a state bar ethical rule prohibited an attorney

16 from representing a client when he knows he will likely be called as a witness,[116] class

17 counsel who is a class member may be required to testify because he has relevant

18 information about the case.[117] If he consents, he may violate ethical rules. If he refuses,

19 the class's interests may not be adequately protected.[118]

20      Here, Plaintiffs' counsel is both a member of the class and a witness. He provides

21 no evidence of handling of nationwide or California class actions or of any court

22

23  [110] *Gen. Tel. Co. of Sw.,* 457 U.S. at 157, fn. 13.

24  [111] *Kayes v. Pac. Lumber Co.,* 51 F.3d 1449, 1465 (9th Cir. 1995).
    [112] *Kramer v. Scientific Control Corp.,* 534 F.2d 1085 (3rd Cir. 1976); *Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102, 104
    (5th Cir. 1978); *Turoff v. May Co.,* 531 F.2d 1357, 1360 (6th Cir. 1976).

25  [113] *Apple Computer, Inc. v. Superior Court,* 126 Cal.App.4th 1253, 1274 (2005); *Susman v. Lincoln American Corp.*, 561
    F.2d 86, 91 (7th Cir. 1977) (majority of courts bar class attorney from acting as class representative).

26  [114] *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1155–56 (8th Cir. 1999), citing *Fechter v. HMW Industries,* 117 F.R.D. 362,
    364 (E.D.Pa.1987) (class member with significant influence over class was *de facto* class representative).

27  [115] *Susman,* 561 F.2d 86, 91; *Bachman v. Pertschuk,* 437 F. Supp. 973, 977 (D.D.C. 1977).
    [116] Cal. Rules of Prof. Conduct Rule 5-210 also bars representation when attorney knows he will be a witness.

28  [117] *Bachman,* 437 F.Supp. at 977.
    [118] *Id.*

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

recognizing him as competent class counsel. He is one of few VRs his clients could identify by name. Moreover, his clients have limited understanding of this matter and intend to follow his direction in managing it. Plaintiffs' counsel thus serves as both class counsel and *de facto* class representative. This is an irreconcilable conflict, rendering him inadequate class counsel. Certification must also be denied on this ground.

## V.   PLAINTIFFS' CLAIMS ARE NOT SUITABLE FOR COLLECTIVE ACTION TREATMENT UNDER 216(B).

Plaintiffs' FLSA claims cannot be conditionally certified for many of the same reasons. In certifying a collective action under the FLSA, a district court must find the proposed class is "similarly situated" to the lead plaintiff.[119] Party Plaintiffs "must be alike with regard to some *material* aspect of their litigation;" that is, "in ways that matter to the disposition of their FLSA claims.[120] Where they are not similarly situated to the proposed class, conditional certification must be denied.[121]

Plaintiffs have not demonstrated they are similarly situated to the proposed class. The individual inquiry required to determine whether each VR expected compensation, or served for personal reasons, suggests no Plaintiff could be similarly situated to any other class member. More importantly, however, two of the three Plaintiffs have confirmed they did not expect compensation and that such an expectation would be unreasonable. These proposed class representatives cannot possibly demonstrate they are similarly situated, when they have effectively removed themselves from the class. The failure of Plaintiffs as adequate class representatives also proves they are not similarly situated. Conditional certification under the FLSA must also be denied.

## VI.   CONCLUSION

For the above reasons, ZogSports respectfully requests that the Court deny Plaintiffs' motion in its entirety.

---

[119] *Misra v. Decision One Mortgage Company, LLC*, 673 F.Supp.2d 987, 992 (C.D. Cal. 2008).
[120] *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018).
[121] *Abrams v. City of Los Angeles*, 2014 WL 6473418, at *2 (C.D. Cal. 2014); *Pfohl v. Farmers Ins. Grp.*, 2004 WL 554834, at *9 (C.D. Cal. 2004).

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  Dated: January 23, 2019            **ATKINSON, ANDELSON, LOYA, RUUD & ROMO**

2                                      By: /s/ Amber S. Healy
3                                          Scott K. Dauscher
                                           Amber S. Healy
4                                          Christopher S. Andre
                                           Attorneys for Defendant ZOGSPORTS
5                                          HOLDINGS LLC, erroneously sued as
                                           ZOGSPORTS

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION