Danny Yadidsion (SBN 260282)
LABOR LAW PC
100 Wilshire Blvd, Suite 700
Santa Monica, California 90401
Telephone: (310) 494-6082
Facsimile: (877) 775-2267
Danny@LaborLawPC.com

Attorney for Plaintiffs,
KEITH ERNST, ARTHUR OGANESYAN, and ALAN NAH,
INDIVIDUALLY, AND ON BEHALF OF THE CLASS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| KEITH ERNST, ARTHUR OGANESYAN, and, ALAN NAH, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>ZOGSPORTS, an unknown business entity; and DOES 1-50, Inclusive,<br><br>                    Defendant. | Case No.        2:18-cv-09043-RGK (MRWx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Judge:       Hon. R. Gary Klausner<br>Date:        September 3, 2019<br>Time:        9:00 a.m.<br>Ctrm:        850<br><br>Removal Filed: October 22, 2018<br>Complaint Filed:   September 20, 2018<br>[Los Angeles County Superior Court] |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD: test

NOTICE IS HEREBY GIVEN that on September 3, 2019, at 9:00 a.m. in Courtroom 850 before Hon. R. Gary Klausner of the United States District Court, Central District of California, Plaintiffs Keith Ernst, Arthur Oganesyan and Alan Nah ("Plaintiffs") move the Court for preliminary approval of the Class Action Settlement Agreement (the "Settlement Agreement" or "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Danny Yadidsion ("Dec. Yadidsion")) as to the California Class, and approval of the Settlement as to the

FLSA Collective. In particular, Plaintiffs move for orders:

***As to the California Class:***

(1)    Granting preliminary approval of the Settlement Agreement as to the California Class;

(2)    Approving the proposed schedule and procedure for completing the final approval process for the Settlement as to the California Class, including setting the Final Approval Hearing;

(3)    Approving the Notice of Settlement (attached as **Exhibit 2** to the Dec. Yadidsion);

(4)    Preliminarily approving Class Counsel's request for attorneys' fees and costs;

(5)    Preliminarily appointing and approving ILYM Group, Inc. as the Settlement Administrator for the California Class; and

(6)    Authorizing the Settlement Administrator to email the approved Notice of Settlement to the California Class.

***As to the Collective:***

(1)    Granting approval of the Settlement Agreement as to the Collective;

(2)    Approving the Notice of Settlement as it pertains to the Collective (attached as **Exhibit 2** to the Dec. Yadidsion);

(3)    Approving the proposed schedule for completing the settlement process as to the Collective;

(4)    Appointing and approving ILYM Group, Inc. as the Settlement Administrator for the Collective; and

(5)    Authorizing the Settlement Administrator to email the approved Notice of Settlement to the Collective as set forth in the Settlement Agreement.

Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e) and long-established precedent requiring Court approval for Fair Labor Standards Act settlements. The Motion is based on this notice, the following Memorandum of

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Points and Authorities, the Declaration of Danny Yadidsion, the Declaration of Judge Mitchel Goldberg (Ret'd), and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Preliminary Approval of Class and Collective Action Settlement with their moving papers.

Dated: August 5, 2019            LABOR LAW PC

                                 By:     */s/ Danny Yadidsion*
                                         Danny Yadidsion
                                         Attorney for Plaintiffs and the Settlement
                                         Class

016463.00008
24596230.2

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND COLLECTIVE ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................. 1

II. FACTUAL BACKGROUND ............................................................... 1

III. PROCEDURAL HISTORY .................................................................. 2

    A. Plaintiffs' Claims ...................................................................... 2

    B. Certification of the California Class and FLSA Collective ................. 2

    C. Discovery .................................................................................. 3

    D. Mediation .................................................................................. 4

IV. TERMS OF THE SETTLEMENT ........................................................ 4

    A. Basic Terms and Value of the Settlement .................................... 4

    B. Class and Collective Definitions ................................................. 8

    C. Allocations and Class Member Settlement Shares ........................ 8

    D. Scope of Release ....................................................................... 9

    E. Settlement Administration .......................................................... 9

V. ARGUMENT .................................................................................... 10

    A. The Court Should Grant Preliminary Approval of the Settlement
       as to the California Class and Approval of the Settlement as to
       the Collective ........................................................................... 10

    B. The Court Has Already Concluded That Certification of the
       California Class and Collective Is Appropriate. ............................ 11

       1. Rule 23(b)(3) requirements for class certification have also
          been met. ........................................................................ 12

    C. The Settlement Is Fair, Reasonable, and Adequate. ...................... 12

       1. The terms of the Settlement are fair, reasonable, and
          adequate. ........................................................................ 13

       2. Allocation of Settlement Shares. ........................................ 14

       3. Discovery enabled the Parties to make informed decisions
          regarding settlement. ....................................................... 14

       4. Litigating this action not only would delay recovery, but
          would be expensive, time consuming, and involve
          substantial risk. .............................................................. 15

016463.00008
24596230.2

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND COLLECTIVE ACTION SETTLEMENT

**TABLE OF CONTENTS**
**(CONTINUED)**

<u>Page</u>

   5. The settlement is the product of informed, non-collusive, and arm's length negotiations between experienced counsel. ........................................................................ 16

 D. The Class Representative Enhancement Payments are Reasonable. ................................................................ 16

 E. The Requested Attorneys' Fees and Costs are Reasonable. ............... 17

 F. The Proposed Notice of Settlement and Claims Process Are Reasonable. ................................................................ 18

 G. The Court Should Approve the Proposed Schedule. ......................... 20

VI. CONCLUSION ............................................................ 20

016463.00008
24596230.2

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND COLLECTIVE ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Pages**

**FEDERAL CASES**

*Amchem Prod., Inc. v. Windsor*
  521 U.S. 591 (1997) ........................................................................ 12

*Boyd v. Bechtel Corp.*
  485 F.Supp. 610 (N.D. Cal. 1979).................................................. 14,15

*Churchill Village, LLC. v. Gen. Elec.*
  361 F.3d 566 (9th Cir. 2004) ........................................................ 13,18

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*
  No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016)............... 10

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974) ........................................................................ 18

*Guilbaud v. Sprint/United Management Co., Inc.*
  No. 3:13-cv-04357-VC, Dkt. 181 (N.D. Cal. Apr. 15, 2016) .................... 17

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998)..................................................... 10,13,16,17

*Ikonen v. Hartz Mountain Corp.*
  122 F.R.D. 258 (S.D. Cal. 1988) .................................................... 11

*Lynn's Food Stores, Inc. v. United States*
  679 F.2d 1350 (11th Cir. 1982) ..................................................... 10,11,13

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000) .......................................................... 13

*Mullane v. Cent. Hanover Bank & Trust Co.*
  339 U.S. 306 (1950) ........................................................................ 18

*Noyes v. Kelly Servs., Inc.*
  2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4,
  2008) ..................................................................................... 17,18

*Officers for Justice v. Civil Serv. Comm'n*
  688 F.2d 615 (9th Cir. 1982) ........................................................ 13,14

*Otey v. CrowdFlower, Inc.*
  No. 12-CV-05524-JST, 2015 WL 6091741 (N.D. Cal. Oct. 16,
  2015) ..................................................................................... 10,11

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985) ........................................................................ 18

*Powers v. Eichen*
  229 F.3d 1249 (9th Cir. 2000) ........................................................ 17

- iii -

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND COLLECTIVE ACTION SETTLEMENT

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Pages**

*Silber v. Mabon*
   18 F.3d 1449 (9th Cir. 1994) ................................................................. 18

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) .......................................................... 16,17

*In re Syncor ERISA Litig.*
   516 F.3d 1095 (9th Cir. 2008) ............................................................. 13

*Vizcaino v. Microsoft Corp.*
   290 F. 3d 1043 (9th Cir. 2002) ............................................................ 17

*Wren v. RGIS Inventory Specialists*
   No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .............. 13,16

**FEDERAL CODES/STATUTES**

29 U.S.C. § 216(b) ....................................................................... 2,3,10,11

FLSA .............................................................................................. passim

**STATE CODES/STATUTES**

Cal. Labor Code § 2699(e)(2) ................................................................ 7

Labor Code § 203 ............................................................................. 5,7

Labor Code § 226 ............................................................................. 5,7

**OTHER AUTHORITIES**

California Business and Professions Code ................................................. 2

California Labor Code ........................................................................ 2

Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992) ........................ 19

Dkt. 48, "Certification Order" .............................................................. 1

Fed.R.Civ.P. 23 ......................................................................... 2,10,11

Fed.R.Civ.P. 23(a) .......................................................................... 11

Fed.R.Civ.P. 23(a) and (b) ................................................................. 10

Fed.R.Civ.P. 23(a), (e)(2) ................................................................. 10

Fed.R.Civ.P. 23(b)(3) ...................................................................... 12

Fed.R.Civ.P. 23(c)(2)(B) ................................................................... 18

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND COLLECTIVE ACTION SETTLEMENT

016463.00008
24596230.2

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Pages**

Fed.R.Civ.P. 23(e) ......................................................................................... 10

Fed.R.Civ.P. 23(e)(2) ............................................................................... 10,13

Fed.R.Civ.P. 23(h) ......................................................................................... 19

Fed.R.Civ.P. 30(b)(6) ....................................................................................... 4

Manual for Complex Litigation, Settlement Notice, §§ 21.311 and
    21.312 (4th ed. 2004) ................................................................................. 19

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS AND COLLECTIVE ACTION SETTLEMENT

016463.00008
24596230.2

## I.  <u>INTRODUCTION</u>

This certified class and conditionally certified collective action is brought on behalf of participants in ZogSports recreational football leagues who played in California and volunteered as a referee between September 20, 2014 and May 7, 2019, and participants in ZogSports recreational football leagues who played outside of California and volunteered as a referee between September 20, 2015 and May 7, 2019, respectively. It is based on Defendants' alleged violations of federal and California labor laws. After significant litigation, including pleading motions, discovery, a motion for class certification, notice and opt-in process for the certified California Class and FLSA Collective, and extensive arm's-length negotiations with an experienced mediator, and an independent financial analysis of ZogSports and the individual defendants (Robert Herzog and Michael Mortellaro) by a retired bankruptcy judge of the Central District of California, Judge Mitchel Goldberg (Retired), the Parties have reached a settlement of this action, memorialized in the proposed Class and Collective Action Settlement Agreement [1] ("Settlement"). Plaintiffs seek preliminary approval of the Settlement.

The Parties have resolved the claims of 1,053 Settlement Class Members, for a total non-reversionary settlement of $200,000. The Settlement provides a meaningful benefit to the Settlement Class and is an efficient outcome given the risk and expense of further litigation and the financial limitations of the Defendants. The Settlement is fair, reasonable, and adequate; thus, Plaintiffs respectfully request that the Court grant the requested approvals.

## II. <u>FACTUAL BACKGROUND</u>

As set forth in the Class Certification Order (Dkt. 48, "Certification Order") ZogSports is a for-profit company that organizes adult recreational sports leagues in

---

[1] The terms used in this Motion are based on those terms as defined in the Settlement Agreement. Dec. Yadidsion, Ex. 1.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
AND COLLECTIVE ACTION SETTLEMENT

several states. Its football league games were moderated by one paid referee and unpaid "volunteer referees." Under ZogSports' rules, each team was required to provide a volunteer referee to moderate the game preceding or following its own team's game. A volunteer referee would spend 45 minutes to one hour assisting the paid referee. The volunteer referee rule was worded similarly in all markets. ZogSports incentivized teams to provide volunteer referees by including a rule that penalized teams whose volunteer referees were absent or late. Extra points were given to the team opposing the penalized team at the outset of its next game. (Dkt. 48 at pp. 1-2.) Plaintiffs and Class Members paid to participate in ZogSports' leagues and acted as unpaid volunteer referees. Plaintiffs allege that they should have been classified as employees and compensated appropriately. By soliciting and allowing Plaintiffs to provide services to Defendant without pay, Plaintiffs allege that Defendant violated the FLSA, the California Labor Code, the California Business and Professions Code, and PAGA. (Dkt. 48 at pp. 1-2.)

ZogSports denies these allegations, including the theory that an employment relationship existed. It denies that the allegations are appropriate for class or collective treatment and vigorously opposed class certification. Dec. Yadidsion ¶4.

## III.   PROCEDURAL HISTORY

### A.   Plaintiffs' Claims

Plaintiffs filed their Class Action Complaint on September 20, 2018 asserting FLSA and California law claims. (Dkt. 1.) ZogSports removed this action to federal court on October 19, 2018. (Dkt. 1.) Plaintiffs' filed their First Amended Class Action Complaint ("FAC"), adding Robert Herzog and Michael Mortellaro as defendants. (Dkt. 50.) In the FAC, Plaintiffs allege causes of action under the FLSA, the California Labor Code, Business and Professions Code and PAGA. (Dkt. 51.)

### B.   Certification of the California Class and FLSA Collective

Plaintiffs moved for class certification of the California and FLSA claims and under Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) on January 14,

016463.00008
24596230.2

2019. (Dkt. 27.) On February 21, 2019, the Court granted Plaintiffs' motion and certified the following (Dkt. 48):

California Class defined as: All persons who worked as unpaid volunteers during any football game organized or conducted by Defendant, in California, at any time from September 20, 2014 through and including the date judgment is rendered in this matter.

Conditional certification of this case as a collective action pursuant to FLSA § 216(b) on behalf of the FLSA Class, defined as: All persons who worked as unpaid volunteers during any football game organized or conducted by Defendant, in the United States, at any time from September 20, 2015 through and including the date judgment is rendered in this matter.[2]

On March 8, 2019, the Parties submitted proposed class and collective action notices, self-identification opt-in plan. (Dkt. 55.) The Court approved the notice/opt-in process on March 11, 2019. (Dkt. 56.) Pursuant to the Court's Order on May 7, 2019, the class and collective opt-in period commenced. (Dec. Yadidsion ¶13.) The administrator disseminated the notice/opt-in to putative class and collective members on May 7, 2019, with an opt-in deadline of June 6, 2019. (*Id.* ¶14.) 1,053 people self-identified as class or collective members, 375 from the California Class and 678 from the Collective. (*Id.* ¶15, Ex. 3.)

## C.    Discovery

Throughout this litigation the Parties engaged in extensive and contentious discovery. ZogSports has produced several thousand pages of documents and significant amounts of electronic data, which Plaintiffs' counsel and their expert

---

[2] For settlement purposes the Parties agreed that the Collective and Class Period ends May 7, 2019, which is the date that class/collective notice and opt-in process commenced. ZogSports eliminated the volunteer referee rule in all markets shortly after the original Complaint was filed, and as of May 7, 2019, none of ZogSports leagues have unpaid volunteer referees. Dec. Yadidsion ¶21.

analyzed. (Dec. Yadidsion ¶5.) The documents included policies, practices, procedures, rules, game schedules, volunteer referee slots for football leagues, excel spreadsheets detailing leagues and other data. (*Id.* ¶6.) Plaintiffs secured these records through diligent discovery practice. (*Id.* ¶7.) Plaintiffs and ZogSports had several discovery disputes, which resulted in discovery conferences with Magistrate Judge Wilner and contested discovery motions. (*Id.* ¶8; Dkt. 15, 18, 20-22, 24-26, 32.) Plaintiffs took the deposition of ZogSports Rule 30(b)(6) and had noticed the deposition of Defendant Herzog when the Parties reached an agreement to settle the case. (Dec. Yadidsion ¶9.) ZogSports took the depositions of Plaintiffs Oganesyan and Nah, and had noticed the deposition of Plaintiff Ernst and was scheduling and preparing deposition notices of select Class and Collective Members when the Parties reached an agreement to settle. (*Id.*) ZogSports had a significant volume of written discovery to Plaintiffs outstanding on the date settlement was reached. (*Id.*)

### D.   Mediation

Plaintiffs and ZogSports mediated this dispute on May 31, 2019 with Francis J. "Tripper" Ortman, III, a respected and experienced mediator. (Dec. Yadidsion ¶16.) The mediation session was unsuccessful. After the mediation, with Mediator Ortman's assistance, the Parties engaged Judge Mitchel Goldberg, a retired bankruptcy judge, to conduct a financial analysis of ZogSports and the two individual defendants. (*Id.* ¶17.) After a series of conferences with counsel, Judge Goldberg completed his financial analysis and shared it with counsel. (*Id.* ¶18) Thereafter, the Parties had further negotiations through Mediator Ortman. (*Id.*) On July 25, 2019, Mediator Ortman made a mediator's proposal which contained the essential terms of the Settlement and this proposal was accepted. (*Id.*)

## IV.   <u>TERMS OF THE SETTLEMENT</u>

### A.   **Basic Terms and Value of the Settlement**

ZogSports has agreed to pay a non-reversionary Gross Settlement Amount ("GSA") of $200,000.00 to settle the case. (Dec. Yadidsion ¶23.) The Net

Settlement Amount, the amount available to pay settlement shares to the Settlement Class Members, is defined as the GSA less the following payments: the PAGA payment to the LWDA ($3,750); Court approved enhancement payments (totaling $19,500 with Plaintiffs each allocated up to $6,500); the Settlement Administrator's fees and costs (up to $15,000); attorneys' fees and costs awarded to Class Counsel (fees of up to 25% of the GSA, or $50,000, plus costs currently estimated to be less than $25,000). (*Id.*) The Net Settlement is estimated to be $86,750. (*Id.* ¶ 24).

The GSA resulted from substantial arms' length negotiations, significant investigation and the financial condition analysis performed by Judge Goldberg. Plaintiffs' Counsel based their damages analysis and settlement negotiations on discovery obtained, discussions with Class and Collective Members, and expert evaluation. (Dec. Yadidsion ¶46.) Assuming that Plaintiffs and the Class Members would maintain certification of all of their claims and prevail at trial, Plaintiffs' Counsel calculated the total potential exposure, including all penalties from willful conduct, to be approximately $2,049,853. (Dec. Yadidsion ¶47). The total amount of damages is broken down as follows:

Plaintiffs calculated that unpaid wages owed for the California Class and FLSA Collective would total $108,727[3]. Additionally, these amounts are potentially subject to liquidated damages, assuming willfulness could be demonstrated, doubling the potential damages to approximately $217,454. (Dec. Yadidsion ¶48).

If successful in their claims, California Class Members may have been able to recover additional penalties of $1,832,399[4]. (Dec. Yadidsion ¶49). The $200,000 GSA represents more than 91% of the approximate $217,454 in unpaid wages that

---

[3] $62,784 for the California Class and $45,943 for the Collective

[4] The penalties are broken down as follows for the California Class: waiting time penalty claim for under Labor Code § 203 would be approximately $1,080,000, assuming willfulness could be established. (*Id.*) Plaintiffs estimate the wage statement claim under Labor Code § 226 could total as much as $501,600. Plaintiffs estimated the PAGA penalties at approximately $250,799. (*Id.*)

could have been owed to all Class Members. (Dec. Yadidsion ¶50.) When adding potential California penalties, the $200,000 represents approximately 10% of Defendants' total potential exposure of $2,049,853. *(Id.)* These figures are based on Plaintiffs' assessment of a best-case-scenario. To have obtained such a result at trial, Plaintiffs would have had to prove that an employment relationship existed, the number of hours volunteered by each Class Member and that Defendants acted willfully, knowingly or in bad faith. (*Id.* ¶51.) Further, with respect to the FLSA claim, ZogSports asserted unique defenses based upon the lack of an employment relationship and asserted that the recreational exemption under 13(a)(3) of the FLSA applied and purportedly would be a complete defense to the FLSA claims.  (*Id.*)

In reaching this settlement, Plaintiffs considered the risk that the case presented novel legal issues, ZogSports and Plaintiffs were preparing cross-motions for summary judgment, and ZogSports was also planning to file a motion to decertify the class and collective. The independent financial analysis conducted by Judge Goldberg concluded that ZogSports would be unable to pay a significant portion of Plaintiffs' "best case scenario" damages, and there was a risk that the Court would decline to find ZogSports liable. (Dec. Yadidsion ¶59.)

Defendants provided confidential financial information to Judge Goldberg who conducted a financial analysis of the company and concluded that financial ability to pay was limited. (Dec. Judge Mitchel Goldberg ¶7.) After reviewing financials consisting of, among other things, federal and State tax returns, balance sheets, income and loss statements, he concluded that the maximum amount that ZogSports could pay to satisfy a judgment or settlement was approximately $200,000 without disruption to the business and provided that it would not be paid for nine to twelve months. (*Id.* ¶¶4, 7, 8.)  The settlement permits ZogSports a brief amount of additional time, until September 2020, to fund the settlement to ensure that the funds are available without issue or delay.  Judge Goldberg's analysis informed and framed the Parties continued negotiations. (Dec. Yadidsion ¶56.)

- 6 -

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Plaintiffs' counsel took Judge Goldberg's analysis into account in assessing the risks inherent in refusing the mediator's proposal. (*Id.*) Plaintiffs also considered the likelihood that ZogSports would not be held liable, or that the Court could decline to find it acted willfully or in bad faith and accordingly reduce or refuse to assess penalties. There was a risk that PAGA civil penalties, if awarded,    would have been significantly reduced based on the financial condition of the business and other factors. Cal. Labor Code § 2699(e)(2); (*Id.* ¶57.)

ZogSports maintained that even if Plaintiffs could prevail on their claims, the maximum wage exposure for all football volunteer referee time slots available was $103,463. ZogSports maintained that the maximum number of hours available, assuming each volunteer slot was filled, and that each slot was one hour, was no more than 11,569 hours (5,232 in California and 6,337 outside of California). (Dec. Yadidsion ¶58.) ZogSports represented that they calculated this number by taking the total one-hour referee slots available and multiplying by the applicable minimum wage for the location at the time. (*Id.*) ZogSports maintained that no penalties under Labor Code section 203 would be imposed because the case presented novel issues and ZogSports did not act willfully as required by that statue, and further, less than all 375 California Class Members would be entitled such penalties because the statute of limitations is three years, rather than the four years that applies to the wage claims. (*Id.*) With respect to Labor Code section 226, ZogSports maintained that no penalties would be imposed because its actions were not knowing or intentional as required. (*Id.*) ZogSports maintained that even if PAGA penalties were assessed, they would have reduced significantly because of the lack of willfulness or bad faith and the statutory authorization permitting courts to reduce penalties. *Cal. Lab. Code* § 2699(e)(2).

Plaintiffs and their counsel considered all of these risks and limitations when evaluating the proposed Settlement. (Dec. Yadidsion ¶60.) The settlement will result in swift and certain payment to Settlement Class Members. The average recovery is

- 7 -

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
AND COLLECTIVE ACTION SETTLEMENT

$82.38 per Class Member. (*Id.* ¶61.) This provides an  immediate recovery in the face of uncertain litigation. In light of all of the risks, and the financial limitations, the settlement amount is fair, reasonable, and adequate. (*Id.*  ¶62.)

### B.     Class and Collective Definitions

The "**California Class**" was certified by this Court and for purposes of settlement is defined as follows: All persons, who served as unpaid volunteers during any football game organized or conducted by Defendants in California since September 20, 2014, who self-identified prior to the June 6, 2019 self-identification deadline. There are 375 California Class Members. (Dec. Yadidsion ¶44.)

The "**Collective**" was a conditionally certified by this Court and includes all opt-in Plaintiffs. There are 678 opt-in Plaintiffs. (Dec. Yadidsion ¶45.) The Collective is defined for settlement purposes as: All persons, who served as unpaid volunteers in the United States during any football game organized or conducted by Defendants since September 20, 2015, who submitted an opt-in form to join the FLSA Collective prior to the June 6, 2019 opt-in deadline. (*Id.*)

### C.     Allocations and Class Member Settlement Shares

The Net Settlement Amount to be paid to Settlement Class Members is approximately $86,750. (Dec. Yadidsion ¶24.) Settlement Class Members will each receive a settlement check without the need to submit a claim. (*Id*. ¶21, Ex. 1, ¶3(C), ¶43.) Each Settlement Class Member's Individual Settlement Share will be determined based on a pro-rata basis tied to the total number of registered ZogSports football seasons that he/she had during the applicable time periods versus the total registered ZogSports football seasons of all Settlement Class Members. (*Id.* at Ex. 1, ¶4(C).)

The Class Notice will provide the estimated Individual Settlement Share and number of registered ZogSports' football season for the Class Member. (*Id.* Exs. 1, 2.) Settlement Class Members will be paid within seven days after the deposit of the settlement payment by ZogSports into the Qualified Settlement Fund provided that

- 8 -

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

the settlement is Final at that time. (*Id.* at Ex. 1, ¶3.) Settlement checks will remain valid for 180 days from the date of their issuance. (*Id.* at ¶4(F).) Any uncashed check funds remaining after the check-cashing deadline will be donated to a *cy pres*. The Parties propose the University of California Berkeley's Institute for Research on Labor and Employment, which promotes better understanding of the conditions, policies, and institutions that affect the well-being of workers. (*Id.* at ¶4(F).)

### D.     Scope of Release

The proposed Settlement will release all claims that were or could have been asserted in the operative FAC based on the facts alleged in support of Plaintiffs' specific causes of action. (Dec. Yadidson ¶21, Ex. 1, ¶2(A).) At final approval, California Class Members will be deemed to have released such claims based on California law; Collective Members will be deemed to have released their claims under the FLSA. For California Class Members, only those who cash or deposit their Settlement Award check will release their FLSA claims. The release extends to May 7, 2019, and the Released Parties are Defendants and their related persons and entities. (*Id.* at ¶2(A)-(C).)

### E.     Settlement Administration

The Parties have agreed to use ILYM Group, Inc. to administer the Settlement; estimated costs will not exceed $15,000. (Dec. Yadidson ¶34, Ex. 4.) The Settlement Administrator will distribute the Notice of Settlement via email, calculate Individual Settlement Shares and prepare and issue all disbursements to Class Members, the LWDA, the Class Representatives, and Class Counsel. (*Id.*at Ex. 4; Ex. 1, ¶¶4, 7.) The Settlement Administrator will establish a settlement website that will allow Class Members to view the Class Notice (in generic form), and other pertinent documents. (*Id.*) The Settlement Administrator will establish a toll-free number and an email address to field inquiries. (*Id.*)

016463.00008
24596230.2

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

## V. **ARGUMENT**

### A.   **The Court Should Grant Preliminary Approval of the Settlement as to the California Class and Approval of the Settlement as to the Collective**

A certified class action may not be settled without Court approval. *See* Fed.R.Civ.P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which class members may be heard, and at which the fairness, adequacy, and reasonableness of the settlement is evaluated. Manual for Complex Litigation, § 21.61 (4th ed. 2004). The decision to approve a proposed settlement is within the sound discretion of the court. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and adequate. Fed.R.Civ.P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020.

This class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). (Dec. Yadidsion ¶64.) Accordingly, the Court should preliminary approve the settlement.

Court approval is required for FLSA collective settlements, but the Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015). Most courts in this Circuit, however, consider whether the named plaintiffs are "similarly situated" to the putative class members within the meaning of 29 U.S.C. § 216(b), and then evaluate the settlement under the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v.*

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
AND COLLECTIVE ACTION SETTLEMENT

*United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). *Lynn's Food* requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey*, 2015 WL 6091741, at *4. "If a settlement in a[]…FLSA suit does reflect a reasonable compromise over issues...that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354; *Otey*, 2015 WL 6091741, at *4.

The Court has already conditionally certified a collective under § 216(b) for Plaintiffs' FLSA claims, and 678 people opted in. (*See* Dkt. 48; Dec. Yadidsion ¶45, Ex. 3.) At the time of settlement, Defendants had not moved for decertification of the FLSA claim. The proposed Settlement represents a reasonable compromise, accordingly, the Court should approve the Settlement as to the Collective.

**B.     The Court Has Already Concluded That Certification of the California Class and Collective Is Appropriate.**

On February 21, 2019, this Court certified the California Class pursuant to Rule 23. As such, this Court has already determined that the California Class is: (1) is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interests of all members of the class. Fed.R.Civ.P. 23(a).  As the Court has already concluded that each of these requirements are satisfied, no further finding is required for purposes of approving this settlement. Further, the post-certification identification of 375 California Class Members satisfies the numerosity requirement. *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988).

With regards to the Collective, in its Certification Order, this Court made a determination that the Collective Members are similarly situated. In addition, the

016463.00008
24596230.2

Court concluded that Plaintiffs satisfied their burden of making substantial allegations and a modest factual showing Collective Members were subject to a practice or policy that is alleged to have violated the FLSA. (Dkt. 48.)

Since the Court's Certification Order, Plaintiffs have continued to prosecute this case with the interests of the Class Members in mind and thus, they continue to be adequate representatives of the Settlement Class. (Dec. Yadidsion ¶12.)

### 1.   Rule 23(b)(3) requirements for class certification have also been met.

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Here, Plaintiffs contend the common questions raised in this action predominate over any individualized questions. (Dec. Yadidsion ¶66.) In its Certification Order, this Court agreed; thus, no further inquiry is required in connection with the approval of this Settlement. (Dkt. 48.)

Further, because this action involves over a thousand people with similar, but small claims for monetary injury, if the Settlement Class Members proceeded on their claims as individuals, their individual suits would require duplicative discovery and litigation. Thus, the class action mechanism will efficiently resolve numerous claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation. (Dec. Yadidsion ¶67.) The issues raised by the present case are much better handled collectively by way of a settlement. (*Id.* ¶68.) Manageability is not a concern in the settlement context. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). Accordingly, continued class treatment is for purposes of settlement is efficient and warranted.

### C.   The Settlement Is Fair, Reasonable, and Adequate.

In deciding whether to approve a proposed class or collective settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate."

- 12 -

016463.00008
24596230.2

Fed.R.Civ.P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Lynn's Food Stores*, 679 F.2d at 1354-55. Included in this analysis are: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

### 1. The terms of the Settlement are fair, reasonable, and adequate.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery, especially where a financial analysis shows potential inability to pay. *See, e.g., Officers for Justice*, 688 F.2d at 623. Here, as detailed above, the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. (Dec. Yadidison ¶69.) The settlement result is well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation and the limited financial resources available to satisfy a judgment in Plaintiffs' favor. (Dec. Yadidison ¶62.) Furthermore, after reviewing the financial

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
AND COLLECTIVE ACTION SETTLEMENT

analysis of Judge Goldberg, Plaintiffs recognize ZogSports would have been unable to pay a significant portion of damages, and issues of liability based on Plaintiffs' novel theory were uncertain. (Dec. Yadidsion ¶59.) The final settlement amount takes into account the financial condition analysis, substantial risks inherent in litigation, the procedural posture and the specific defenses asserted, many of which are unique to this case. (Dec. Yadidsion ¶60; *Officers for Justice*, 688 F.2d at 623.)

### 2.   Allocation of Settlement Shares.

The Parties have agreed to allocate the settlement proceeds amongst Class Members in a pro-rata manner that recognizes that amount of time that the particular Settlement Class Member may have performed potentially compensable volunteer hours for ZogSports. The allocation method is based on the number of registered football seasons in which a volunteer referee rule applied for each Class Member versus the total number of registered football seasons in which a volunteer referee rule applied for all Class Members and will compensate each Class Member in a fair manner reflective of the number of hours he/she may have spent volunteering. (Dec. Yadidsion ¶69.) The allocation was made based on Class Counsel's assessment to ensure that employees are compensated accordingly and in the most equitable manner. (*Id.*) Plaintiffs provide rational bases for the allocation method, and request that it be approved by the Court.

### 3.   Discovery enabled the Parties to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g., Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979). The Parties engaged in extensive discovery that enabled both sides to assess the claims and potential defenses in this action. (Dec. Yadidsion ¶5.) The Parties were able to accurately assess the legal and factual issues that would arise if the case proceeded to trial. (*Id.*)

- 14 -

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
AND COLLECTIVE ACTION SETTLEMENT

In addition, in reaching this Settlement, Class Counsel relied on their litigation experience in similar class and/or collective actions. (*Id.* ¶2.) Class Counsel's liability and damages evaluation was premised on an extensive analysis of information obtained. (*Id.* ¶22.) Facilitated by Mediator Ortman, the Parties used this information and discovery to fairly resolve the litigation. (*Id.* ¶¶19, 46, 59.)

### 4. Litigating this action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk.

The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. (Dec. Yadidsion ¶62.) If this case were to go to trial as a class and collective action, (which Defendants would vigorously oppose if this Settlement Agreement were not approved), Class Counsel estimates that their fees and costs would exceed $750,000. (*Id.* ¶63.) Litigating the class and collective action claims would require substantial additional preparation and discovery. (*Id.*) It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. (*Id.*)

Recovery of the damages and penalties would also require complete success. (*Id.* ¶53.) Plaintiffs face risk that the Court could decertify the Class and Collective for at least some claims. (*Id.* ¶54.) Moreover, Plaintiffs considered the risk that the Court would, in the end, decline to find ZogSports liable or determine that no employment relationship existed between Settlement Class Members and ZogSports. (*Id.* ¶59.) Though Plaintiffs averred claims of liability against individual owners, their liability would be heavily contested. (*Id.*) Furthermore, based on the confidential financial information analyzed by Judge Goldberg, ZogSports faced an inability to pay a significant portion of Plaintiffs' alleged class-wide damages. (Dec. Yadidsion ¶56; Dec. Judge Goldberg ¶7.) Plaintiffs risked receiving no recovery at all. (Dec. Yadidsion ¶55.) In contrast to litigating this suit, resolving this case by

- 15 -

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

means of the Settlement will yield a prompt and certain recovery for Class Members. (*Id.* ¶61.) Such a result benefits the Parties and the court, it will bring finality to arduous litigation, and will foreclose further litigation activity.

### 5. The settlement is the product of informed, non-collusive, and arm's length negotiations between experienced counsel.

Courts presume a settlement is fair where it is reached through arm's-length bargaining. *Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the class and collective in a settlement based on their experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10. Here, the settlement was a product of extensive, non-collusive, arm's-length negotiations. (Dec. Yadidsion ¶19.) The Parties participated in one full day mediation session plus several hours of follow up discussions with Judge Goldberg and Mediator Ortman over a two-month period. (*Id.*) Mediator Ortman assisted the Parties in their extensive, continued arm's-length negotiations subsequent to the mediation and after the release of Judge Goldberg's financial analysis. (*Id.*) The Parties negotiated the long form settlement agreement, with several hours of meet and confers related to the terms and details. (*Id.* ¶20.) Plaintiffs are represented by an experienced litigator, and their counsel believes that the proposed Settlement achieves an excellent result for Class Members. (*Id*. ¶22.)

### D. The Class Representative Enhancement Payments are Reasonable.

Named plaintiffs in class action litigation are eligible for reasonable enhancement payments. (*Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).) The enhancement payments of up to $6,500.00 each for Plaintiffs Ernst, Nah and Oganesyan are intended to compensate Plaintiffs for the role they played in this case, and the time, effort, and risks undertaken in helping secure the settlement. (Dec. Yadidsion ¶25.) In agreeing to serve as representatives, Plaintiffs agreed to accept the responsibilities of representing the interests of all Class Members. (*Id.*

- 16 -

¶26.) Defendants do not oppose the requested payments. (*Id.* ¶27.) The enhancements are fair when compared to the payments approved in similar cases. *See, e.g.*, *Guilbaud v. Sprint/United Management Co., Inc.,* No. 3:13-cv-04357-VC, Dkt. 181 (N.D. Cal. Apr. 15, 2016) (approving $10,000 service payments).

### E.   The Requested Attorneys' Fees and Costs are Reasonable.

In their fee motion to be submitted, Class Counsel will request up to 25% of the GSA, or $50,000, plus reimbursement of costs, which to date total approximately less than $25,000. (Dec. Yadidsion ¶31.) Here, Class Counsel's current cumulative lodestar is over $300,000, which far exceeds the requested fee award, and is not inclusive of the work that Class Counsel will continue to perform in bringing this settlement to a close. (*Id.* ¶32.) On this basis, the requested attorneys' fees award is eminently reasonable. (*Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1050-51 (9th Cir. 2002).)

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952. In this case, the results achieved, the effort expended litigating the case, and the difficulties attendant to litigating this case, the attorneys' fee is warranted. (Dec. Yadidsion ¶28.) There was no guarantee of compensation; rather, counsel undertook the risks of this litigation on a contingent fee basis. Defendants' vigorous and skillful defense confronted Class Counsel with the prospect of recovering nothing for their commitment and investment in the case. (*Id.*)

Nevertheless, Plaintiffs and Class Counsel committed themselves to developing and pressing Plaintiffs' legal claims to enforce their rights and maximize the class and collective recovery. (*Id.* ¶29.) The challenges that Class Counsel had to confront and the risks they had to fully absorb on behalf of the class and collective here are precisely the reasons for multipliers in contingency fee cases. *See, e.g.*, *Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D.

- 17 -

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
AND COLLECTIVE ACTION SETTLEMENT

Cal. Aug. 4, 2008).)

For these reasons, Class Counsel respectfully submits that a 25% fees is appropriate. (*Id.* ¶30.) The lodestar amount will increase with preparation of the final approval papers, preparation and attendance at hearings, communications with Class Members, and settlement administration oversight. (*Id.*at ¶33.) Class Counsel also requests reimbursement for their litigation costs. (*Id.*) The fee and costs award should be preliminarily approved as fair and reasonable. (*Id.*)

**F.    The Proposed Notice of Settlement and Claims Process Are Reasonable.**

The Court must ensure that Class Members receive the best notice practicable under the circumstances of the case. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village LLC*, 361 F.3d at 575.

The Notice of Settlement and the manner of distribution negotiated and agreed upon by the Parties is "the best notice practicable." (Dec. Yadidison ¶36), Fed.R.Civ.P. 23(c)(2)(B). All Class Members have self-identified and the Notice of Settlement will be emailed directly to each Class Member. (Dec. Yadidison ¶35; Ex. 1, ¶9.) The proposed Notice is clear and straightforward, and provides information on the nature of the action to the proposed Class and Collective, the terms of the Settlement Agreement, and the monetary amounts that the Settlement will provide Class Members. In addition, the Settlement Administrator will establish a settlement

- 18 -

website that will allow Class Members to view the Class Notice (in generic form), the Settlement Agreement, and the motions for preliminary, final approval and award of attorneys' feest, and other case related documents and contact information. (*Id.* at Ex. 1, ¶7, Dec. Yadidsion ¶37, Ex. 2.)

The proposed Notice fulfills the requirement of neutrality in class notices. (Dec. Yadidsion ¶38); Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992). The Notice summarizes the proceedings necessary to provide context for the Settlement and summarizes the terms of the Settlement, including an explanation of how the settlement amount will be allocated in an informative, coherent and easy-to-understand manner, in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." (Dec. Yadidsion ¶39); Manual for Complex Litigation, Settlement Notice, § 21.312 (4th ed. 2004).

The Class Notice clearly explains the procedures and deadlines for requesting exclusion from the Settlement, objecting to the Settlement, the consequences of taking or foregoing the various options available to Class Members, and the date, time and place of the Final Approval Hearing. (Dec. Yadidsion ¶40.) Pursuant to Rule 23(h), the proposed Class Notice also sets forth the amount of attorneys' fees and costs sought by Plaintiffs, as well as an explanation of the procedure by which Class Counsel will apply for them. (*Id.*) The Class Notice clearly states that the settlement does not constitute an admission of liability by Defendants. (*Id.*) It makes clear that the final settlement approval decision has yet to be made. (*Id.*) Accordingly, the Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. (*Id.*); *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, Certification Notice, § 21.311; Settlement Notice, § 21.312 (4th ed. 2004).

Furthermore, reasonable steps will be taken to ensure that all Class Members

- 19 -

receive the Notice. (Dec. Yadidsion ¶41; Ex. 1, ¶7, 9.) With respect to Class Notices returned as undeliverable, the Settlement Administrator will make reasonable efforts to locate the Settlement Class Member and re-send the notice. (*Id.*)

Settlement Class Members will have 60 days from the mailing of the Notice to opt-out or object to the Settlement. Any Class Member who does not submit a timely request to exclude themselves will be deemed a Class Member whose rights and claims are determined by any order the Court enters granting final approval, and any judgment the Court ultimately enters in the case. (Dec. Yadidsion ¶42; Ex. 1, ¶9.) Administration of the Settlement will follow upon the occurrence of the Settlement becoming Final and the funding occurring.

Because the proposed Notice of Settlement clearly and concisely describe the terms of the Settlement and the awards and obligations for Class Members who participate, and because the Notices will be disseminated in a way calculated to provide notice to as many Class Members as possible, the Class Notice should be preliminarily approved.

### G.    The Court Should Approve the Proposed Schedule.

Plaintiffs respectfully request this Court approve the Settlement and adopt the timeline set forth in the Settlement Agreement and [Proposed] Order submitted herewith.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement Agreement as to the California Class and approval of the Settlement Agreement as to the Collective.

Dated: August 5, 2019          LABOR LAW PC

By:     */s/ Danny Yadidsion*
Danny Yadidsion
Attorney for Plaintiffs and the Settlement Class

016463.00008
24596230.2

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
AND COLLECTIVE ACTION SETTLEMENT